IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JESSICA PEREZ, INDIVIDUALLY AND AS NEXT FRIEND OF KH AND MH, MINOR CHILDREN; | § § § § § § § § § § § § | SA-19-CV-00375-XR |
| *Plaintiff,* | | |
| vs. | | |
| ALVIN BOECKEN, JIM BALLARD, | | |
| *Defendants.* | | |

## ORDER

Before the Court in the above-styled cause of action are the following four discovery motions: Motion to Quash and for Protective Order, filed by non-party Alamo Neurosurgical Institute [#13]; Opposed Motion to Quash and for Protective Order, filed by Plaintiff [#14]; Defendants' Motion to Compel Answers to Deposition by Written Questions and Production of Documents and Response to Opposed Motion to Quash and for Protective Order [#17]; and Motion for Protective Order of Non-Party Movant Foundation Surgical Hospital of San Antonio, Motion to Quash, and Objections to Discovery [#19]. All four motions were referred to the undersigned for disposition, and the Court held a hearing on the motions on September 30, 2019. The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, the Court will grant the motions to quash filed by non-parties Alamo Neurosurgical Institute and Foundation Surgical Hospital of San Antonio, deny the motion to compel filed by Defendants, and dismiss the motion to quash filed by Plaintiff.

## I. Background

This case arises out of a motor-vehicle collision between a car operated by Plaintiff Jessica Perez and a commercial vehicle driven by Defendant Alvin Boecken in the course of his

1

employment with Defendant Jim Ballard d/b/a CAB Transport. Keegan Hillsman and Morgan Hillsman, Plaintiff's minor children, were passengers in Plaintiff's car at the time of the accident. Plaintiff filed this lawsuit on behalf of herself and as next friend of her children against Defendants, alleging various theories of negligence and seeking damages for her alleged injuries stemming from the accident. (Orig. Compl. [#1].) Plaintiff's claimed damages include past and future reasonable and necessary medical care and expenses related to these injuries. (*Id.* at 4.)

After the accident, Plaintiff sought treatment with various medical providers for her alleged injuries, including Alamo Neurosurgical Institute ("Alamo") and Foundation Surgical Hospital of San Antonio ("Foundation"), the non-party movants who have filed two of the motions to quash before the Court. On September 4, 2019, notices of an intention to take deposition by written question and accompanying subpoenas were served on behalf of Defendants to the custodian of records for Alamo and Foundation. The subpoenas directed the records custodians to produce to Defendants for inspection and copying the following:

a) Any and all contracts regarding negotiated or reduced rates for services provided to Jessica Perez including those with Aetna, United Healthcare, First Care, Blue Cross Blue Shield, Medicare, and Medicaid from 10/19/17 to the present.

b) Any Annual Cost Report you are required to provide to a Medicare Administrative Contractor, as a Medicare certified institutional provider for the years 2013, 2014, 2015, 2016, and 2017.

(Subpoena [#19-1] at 4.) The notices also asked Alamo and Foundation to "state their Medicare reimbursement rates for any medical services performed for Jessica Perez . . . from 10/19/17 to the present, including but not limited to epidural steroid injections, x-rays, CT scans, laboratory tests and emergency room services." (Question No. 13 [#19-1] at 5.)

Alamo and Foundation have moved to quash the requests for production and information on reimbursement rates pursuant to Rule 45 of the Federal Rules of Civil Procedure [#13, #19].

Defendants have conversely moved to compel responses to the questions posed to Alamo and Foundation and production of the requested documents pursuant to Rules 45 and 37 [#17]. Plaintiff filed her own motion to quash pursuant to Rules 45 and 26 arguing for the limitation of the discovery propounded on Alamo and Foundation. The motions are now ripe for the Court's review.

## II. Analysis

The Court will grant the motions to quash filed by Alamo and Foundation and deny the motion to compel filed by Defendants. Because the Court's resolution of the motions filed by Alamo and Foundation awards the relief Plaintiff is seeking, the Court need not address whether Plaintiff's motion would be granted on its own merits and will therefore dismiss the motion as moot.

Rule 26 generally limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Alamo and Foundation bring their motions to quash pursuant to Rule 45, which governs subpoenas served on nonparties. Courts apply the same relevance and proportionality limitations encompassed by Rule 26 to motions to quash in the context of Rule 45 so as to avoid imposing any undue burden or expense on the person or entity subject to the subpoena. *See, e.g.*, *MetroPCS v. Thomas*, No. 3:18-MC-29-K-BN, 2018 WL 2933673, at *9 (N.D. Tex. June 12, 2018); *Whitley v. Pinnacle Entm't, Inc.*, No. CV 15-595-BAJ-RLB, 2016 WL 6154938, at *2 (M.D. La. Oct. 21, 2016).

The parties' dispute centers on the interpretation and application of a recent case issued by the Texas Supreme Court, which held that a trial court did not abuse its discretion by permitting discovery of the reimbursement rates of insurers and government payors in a dispute

regarding the enforceability of a hospital lien against an uninsured patient. *See In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 137 (Tex. 2018). Alamo and Foundation contend that *North Cypress* does not apply in the context of a personal-injury action and with respect to discovery sought from non-parties, as here, and that their reimbursement rates are confidential trade secrets that they cannot be compelled to produce. Defendants argue that *North Cypress* applies to this case, the discovery should be permitted as relevant to what constitutes a reasonable charge for Plaintiff's expenses and proportional to the needs of this case, and a standard confidentiality and protective order could be issued to protect any proprietary information.

The Court agrees with Alamo and Foundation that *North Cypress* does not govern the discovery issue before the Court and the information sought is not proportional, even if relevant, to the needs of the case. Moreover, even if Defendants could establish relevance and proportionality as to the disputed discovery, Foundation has established that the reimbursement rates are trade secrets and should not be disclosed and Defendants have failed to satisfy their burden to demonstrate that the discovery of the reimbursement rates are nonetheless necessary to the fair adjudication of this case.

A. *North Cypress* **is not controlling in this context—a personal-injury diversity action in federal court.**

The undersigned has previously addressed the legal question of whether the Texas Supreme Court's decision in *North Cypress* controls this federal court's relevance and proportionality inquiries in a discovery dispute in a personal-injury action and has held it does not. *See Lackey v. Dement*, No. SA-17-CV-00514-FB, 2019 WL 3238896 (W.D. Tex. July 18, 2019). Defendants have not convinced the Court to extend *North Cypress* beyond its holding, and the Court restates its reasoning here. The *North Cypress* case involved a dispute in a Texas

court between an uninsured patient and a hospital over the reasonableness of a hospital lien following emergency-room treatment. 559 S.W.3d at 129–130. The patient sued the hospital in a declaratory judgment action, arguing that the hospital's charges were unreasonable and the lien was invalid to the extent it exceeded a "reasonable and regular rate" for the services rendered. *Id.* The Texas Supreme Court held that the amounts the hospital accepts for the services rendered to the plaintiff from other patients who received the same services—including amounts charged to patients covered by private insurance and government benefits—were relevant to the reasonableness of the challenged hospital lien and therefore discoverable. *Id.* at 134–37.

The *North Cypress* court's reasonableness analysis centered on Texas's hospital-lien statute, which provides hospitals with "an additional method of securing payment from accident victims, encouraging their prompt and adequate treatment." *Id.* at 131; *see also* Tex. Prop. Code § 55.001, *et seq.* The statute contains language that a hospital is to recover the full amount of its lien, subject only to the right to question "the reasonableness of the charges comprising the lien." *N. Cypress*, 559 S.W.3d at 131 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985)); *see also Daughters of Charity Health Servs. v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (noting that the amount of a hospital lien may not exceed "a reasonable and regular rate").

Based on the language of Texas's hospital-lien statute, the Court determined that the "central issue in a case challenging such a lien is what a reasonable and regular rate would be." *N. Cypress*, 559 S.W.3d at 133. The Court reasoned that the amount actually charged to a patient, whether insured or insured, is not dispositive of what constitutes a reasonable rate for purposes of enforcement of a hospital lien. *Id.* Ultimately, the Court held that there is a

5

"potential connection between reimbursement rates and the reasonableness of billed charges," despite the many factors that affect the negotiated rate with a particular insurer. *Id.* at 135.

Defendants ask this Court to extend *North Cypress* to the context of personal-injury litigation and therefore to find that the contractual reimbursement rates between an insurer and a medical provider are relevant and proportional as to an uninsured plaintiff's damages claim for past medical expenses. No Texas court has yet extended *North Cypress* to this situation. In support of their argument, Defendants direct the Court to two decisions by a federal court from this district, however, which permitted similar discovery in the personal-injury context. *See Eyer v. Rivera*, No. SA-17-CV-01212-OLG, 2019 WL 626140, at *1 (W.D. Tex. Jan. 7, 2019) (granting motion to compel answer to deposition by written questions and production of document with respect to reimbursement rates for various services performed). *See also Ochoa v. Mercer Transp. Co.*, No. 5:17-CV-1005-OLG, 2018 WL 6220155, at *1–2 (W.D. Tex. June 8, 2018) (denying motion to quash with respect to reimbursement rates from private insurers).

In applying the reasoning of *North Cypress* to the personal-injury context, these cases both relied on the requirement in Texas law that a claim for past medical expenses be supported by evidence that such expenses were reasonable and necessary. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004) (collecting Texas cases on reasonableness requirement for recovering past medical expenses). A plaintiff must prove reasonableness and necessity by expert testimony or affidavit; proffering a medical bill as evidence of damages is not enough. *Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.); *Cowboys Concert Hall-Arlington, Inc. v. Jones*, No. 02-12-00518-CV, 2014 WL 1713472, at *18 (Tex. App.—Fort Worth May 1, 2014, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 18.001. In light of this requirement, the court in *Ochoa* concluded that the reimbursement rates at issue

6

could lead to the discovery of evidence regarding charges paid by other patients for services provided to plaintiff—evidence that would be admissible to show the reasonableness of the health care expenses that the plaintiff paid. 2018 WL 6220155, at *1.[1]

This Court is not persuaded that the Texas Supreme Court would conclude the same, nor that this is the correct result under Fifth Circuit law as to the relevance and proportionality of the discovery. Texas tort law limits the recovery of medical or health care expenses "to the amount actually paid or incurred by or on behalf of the claimant." Tex. Civ. Prac. & Rem. Code § 41.0105. Moreover, Texas's collateral-source rule, which is a rule of both evidence and damages, bars a wrongdoer from offsetting his liability by benefits received by the plaintiff from a third party. *Mid-Century Ins. Co. of Texas v. Kidd*, 997 S.W.2d 265, 274 n.48 (Tex. 1999). Accordingly, in the context of an uninsured patient, the Fifth Circuit (interpreting Texas law) has stated in the context of a personal injury action that the reduced prices that an uninsured plaintiff "may have received had he participated in health benefits or insurance programs for which he may have been eligible are irrelevant." *Guzman v. Jones*, 804 F.3d 707, 712–13 (5th Cir. 2015). Stated another way, the bill received by an uninsured patient is the primary evidence of the amount of past medical damages "because [the patient] received the medical care, was billed for it, has provided no payments to cover it, and could be subject to suit for non-payment in the full amount billed." *Id.* at 711. "The amount [a patient] might have owed under different circumstances has no bearing on what [the patient] actually owes now." *Id.* at 711–12. This reasoning applies with equal force here. What Plaintiff's medical provider charges insured

---

[1] Importantly, the motion to compel that was filed in *Eyer* was unopposed and therefore there was no argument developed before the Court regarding the status of the requested reimbursement rates as trade secrets, as Alamo and Foundation argue here. The motion to quash field in *Ocho* also did not raise the trade-secret argument at the center of the motions to quash before this Court.

patients for the procedures Plaintiff received "has no bearing" on what Plaintiff owes to his medical provider. As that information is not relevant, the tortfeasor defendant should not be allowed to discover it from Plaintiff's non-party medical providers. *See* Fed. R. Civ. P. 26(b)(1) (only authorizing discovery of information that is relevant to a claim or defense).

**B.    The requested discovery is not proportional to the needs of this case.**

Moreover, even if this information does have some attenuated relevance, permitting its discovery is not proportional to the needs of the case under these circumstances. Under Rule 26(b)(1), not only must evidence be relevant to be discoverable, it must be "proportional to the needs of the case." It is significant that the discovery in *North Cypress* was sought from the hospital, who was the defendant in the litigation, for the purposes of determining the dispositive legal question in the case—whether the hospital could enforce a lien against the plaintiff patient for services provided. Essential to that inquiry was a statutorily mandated evaluation of the reasonableness of the amount of the hospital chose to bill the uninsured patient. The hospital, which had negotiated the reimbursement rates, bore the burden of proving the reasonableness of the lien at issue. (Notably, the discovery inquiry in *North Cypress* was also governed by the Texas Rules of Civil Procedure, not the Federal Rules of Civil Procedure, which require proportionality and not merely a demonstration the information sought in discovery is relevant to the subject matter of the pending action and if not itself admissible at least reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a).)

In contrast, the discovery sought here is from non-party medical providers—Alamo and Foundation—for the purpose of challenging the uninsured Plaintiff's claimed damages in the form of past medical expenses and potentially reducing the liability of Defendants—the alleged tortfeasors. Plaintiff bears the burden of proving the reasonableness of her past medical

expenses. Defendants seek information from a non-party for purposes of cross examination. In this context, the Court is not convinced that the requested discovery is proportional to the needs of this case. It places a burden on the third party to provide information that only tangentially relates to an issue in the case.

Moreover, as the parties conceded at the hearing, the third parties' contracted reimbursements rates are not the only source of information about rates for procedures that Defendants could use to challenge the reasonableness of Plaintiff's claimed damages. If Defendants need to determine the reasonableness of Plaintiff's medical expenses, there are other means of evaluating and comparing the actual and billed prices for various procedures. For instance, the Texas Department of Insurance publicly posts the average actual and billed prices for various procedures. (*See* Texas Healthcare Costs, available at www.texashealthcarecosts.org (last visited June 26, 2019).) Additionally, the Medicare and Medicaid reimbursement rates sought by Defendants are publicly available. To the extent that Plaintiff's expert is testifying to charges that Defendants consider unreasonable, Defendants may designate and elicit contrary testimony from a rebuttal expert. Thus, the relative unimportance of the third parties' information in resolving disputed issues as compared to other available information, as well as the burden and expense discovery of this information imposes on non-parties, renders the information disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

**C.    Foundation has established that its reimbursement rates are trade secrets, which are therefore protected from discovery in this case.**

Finally, even if Defendants could demonstrate that the reimbursement rates are relevant to Plaintiff's claims and proportional to the needs of this case, the Court would still decline to permit the requested discovery, at least with regard to Foundation. Alamo and Foundation both

9

assert that their contractually negotiated reimbursement rates with insurance providers and annual cost reports are trade secrets protected from discovery under Texas law.

The Texas Uniform Trade Secrets Act ("TUTSA") requires that courts preserve the secrecy of an alleged trade secret by reasonable means. Tex. Civ. Prac. & Rem. Code § 134A.006. A trade secret . . .

> means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). When trade secret privilege is asserted as the basis for resisting production, "the party resisting discovery must establish that the information sought is indeed a trade secret and that disclosure would be harmful." *In re Continental General Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998). The burden then shifts to the requesting party to establish that the information is relevant and necessary for a fair adjudication of the party's claims or defenses. *Id.* at 612–13. "If the trial court orders disclosure, it should enter an appropriate protective order." *Id.* at 612.

To determine whether a trade secret exists, the Texas Supreme Court applies the Restatement of Torts' six-factor test:

> (1) the extent to which the information is known outside of his business;
> (2) the extent to which it is known by employees and others involved in

his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). A party claiming a trade secret is not required to satisfy all six factors but instead courts must weigh all six factors, as well as any other relevant factor, in the context of the surrounding circumstances to determine whether the information at issue constitutes a trade secret. *Id.* at 740. Although this Texas Supreme Court decision pre-dates TUTSA, the case's trade secret analysis is not inconsistent with the TUTSA definition, and there is nothing else in TUTSA that is in tension with the applicable reasoning of *Bass*. (Defendant argues that TUTSA's definition is only applicable in cases alleging a cause of action under TUTSA, as opposed to this situation, where a party is resisting discovery on the basis that the discovery seeks trade secrets. For the reasons just stated, the analysis is not changed in this case regardless of whether the TUTSA or pre-TUTSA definition of trade secrets is used.)

Alamo and Foundation have each submitted to the Court an affidavit of one of their employees, which address the issue of trade secrets. The affidavit of Frances Gomez, Director of Revenue Cycle Operations for Foundation, states that Foundation's insurance contracts, provider agreements, reimbursement and contractual rates are highly proprietary and confidential and protected from public disclosure by the express terms of the contracts. (Gomez Aff. [#19-2] at ¶¶ 9–12.) Gomez cites to several existing contracts sought by Defendants—its contracts with United Healthcare, Blue Cross Blue Shield, and Aetna—and quotes the contractual provisions prohibiting the disclosure of reimbursement rates to third parties. (*Id.* at ¶¶ 10, 11.) Gomez maintains that Foundation is not permitted to disregard these contractual obligations. (*Id.* at ¶ 11.) According to Gomez, "[t]he billing and collection practices, the negotiated rates, and the

pricing policies and processes of [Foundation] are so valuable to [Foundation] that it has implemented within its own internal management structure, rules and policies specifically designed to safeguard such information and limit its disclosure" and "[a]ccess to financial data contracts and agreements is limited internally to only those persons in management on a need-to-know basis." (*Id.* at ¶ 9.) Gomez highlights the "independent economic value" of the confidential financial information contained in its contracts and states that disclosure of this information would cause Foundation to suffer economic harm with respect to future negotiations with insureds and vis-à-vis competitors and places its existing contractual relationships at risk of potential damages for breach of contract. (*Id.* at ¶¶ 9, 12.)

Alamo submitted an affidavit by Whitney McClain, Practice Administrator for Alamo, which similarly asserts the confidential nature of its healthcare contracts with various insureds. (McClain Aff. [#13-2] at ¶ 3.) This affidavit is not as robust as the affidavit submitted by Foundation. Yet even if the Court were to conclude that Alamo's evidence is insufficient to establish that the information sought is a trade secret, the Court would not permit Defendants to discover the information from Alamo because it is not relevant or proportional, as explained in Sections A and B.

Regardless, Defendants did not respond to Alamo's and Foundation's trade-secret argument with any counter-evidence to Gomez's or McClain's affidavits. The Court therefore at least finds that Foundation's negotiated reimbursement rates are trade secrets because Gomez's declaration establishes that the rates are not known outside of its business or by the majority of employees; the rates are contractually protected from disclosure; and the rates are of great value to Foundation and competing insurers and health care providers. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6); *In re Bass*, 113 S.W.3d at 739. Accordingly, Defendants bear the burden

to show the necessity of the requested materials. *In re Continental*, 979 S.W.2d at 612. Defendants have failed to do so.

For trade secret discovery to be "necessary for a fair adjudication" of a claim, the production must be "material and necessary to the litigation." *Id.* at 615. As was explained above in the context of evaluating whether the information's relative importance to resolving disputed issues, as is mandated to comply with Rule 26's proportionality requirement, if Defendants need to determine the reasonableness of Plaintiff's medical expenses, there are other means of evaluating and comparing the actual and billed prices for various procedures, including the information posted by the Texas Department of Insurance and the publicly available Medicare and Medicaid reimbursement rates.

Finally, Defendants' agreement to a protective order as a means of protecting against the disclosure of Foundation's trade secrets "does not dispense with the requesting party's burden to establish the necessity for the discovery of the trade secret information to fairly adjudicate a claim or defense." *In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, no pet.) Because Defendants have not established the necessity of discovering Foundation's trade secrets—the contractually negotiated insurance rates with various insurers—in order to fairly adjudicate a claim or defense in this case, Defendants are not entitled to discover the information regardless of whether a protective order is entered by the court. *See id.*

In summary, the Court will grant the motions to quash filed by Alamo and Foundation, deny the motion to compel filed by Defendants, and dismiss as moot the motion to quash filed by Plaintiff.

**IT IS THEREFORE ORDERED** that the Motion to Quash and for Protective Order, filed by non-party Alamo Neurosurgical Institute [#13] and Motion for Protective Order of Non-

Party Movant Foundation Surgical Hospital of San Antonio, Motion to Quash, and Objections to Discovery [#19] are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Notices of Intention to take Deposition by Written Questions dated September 4, 2019, directed to Alamo Neurosurgical Institute and Foundation Surgical Hospital of San Antonio are **QUASHED**.

**IT IS FURTHER ORDERED** that the Subpoenas *Duces Tecum* attached to Defendants' Notices of Intention to take Deposition by Written Questions directed to Alamo Neurosurgical Institute and Foundation Surgical Hospital of San Antonio are **QUASHED**.

**IT IS FINALLY ORDERED** that the Opposed Motion to Quash and for Protective Order filed by Plaintiff [#14] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Answers to Deposition by Written Questions and Production of Documents and Response to Opposed Motion to Quash and for Protective Order [#17] is **DENIED**.

SIGNED this 10th day of October, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE