IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JESSICA PEREZ, INDIVIDUALLY AND
AS NEXT FRIEND OF KEEGAN
HILLSMAN AND MORGAN HILLSMAN,
MINOR CHILDREN

CIVIL ACTION NO. 5:19-CV-00375

v.

ALVIN BOECKEN AND JIM BALLARD
D/B/A CAB TRANSPORT

## DEFENDANTS' OPPOSED MOTION TO EXCLUDE THE TESTIMONY AND RECORDS OF PLAINTIFF'S DESIGNATED EXPERT WITNESS MICHAEL LEONARD, M.D.

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME DEFENDANTS, Alvin Boecken and Jim Ballard d/b/a CAB Transport (hereinafter collectively referred to as "Defendants/Movants") in the above styled and numbered cause, and file their Motion to Exclude the Testimony and Records of Plaintiffs' Designated Expert Witnesses Michael Leonard, M.D., and in support thereof would respectfully show this Honorable Court as follows:

## I. INTRODUCTION & BACKGROUND

1.      This lawsuit concerns claims for personal injury damages as a result of a motor vehicle accident which occurred on or about October 19, 2017 in New Braunfels, Texas on Interstate Highway 35.  At the time of the subject accident, Plaintiff, Jessica Perez, Individually, and as Next Friend of Keegan Hillsman and Morgan Hillsman, minor children, alleges a tractor-trailer operated by Alvin Boecken made an unsafe lane change and collided with the Plaintiff's vehicle causing a collision.  As a result, Plaintiff alleges she and the minor children sustained physical injuries for

which she seeks damages.  Specifically, Ms. Perez claims she sustained an injury to her cervical spine in the accident.

2. This lawsuit is set for trial on August 10, 2020.  Plaintiff filed her Designation of Experts on December 23, 2019, identifying a non-retained expert, Michael Leonard, M.D.  Please see attached as Exhibit "A" – a true and correct copy of Plaintiff's Designation of Experts.

3. Plaintiff's expert designation provided the following information in an effort to summarize the opinions and potential testimony of Plaintiff's non-retained experts:

> "…these individuals may have scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact issues. These witnesses may by qualified as an expert by their knowledge, skill, experience, training, or education. By designating these individuals, however, Plaintiff expressly reserves the right to object, at trial or any hearing in this matter, to the qualifications and the reliability and relevance of the purported expertise."

*Id.* at pages 1 – 2.

4. In addition, Plaintiff's designation of non-retained experts provides the following information in an effort to collectively summarize the anticipated testimony and basis for the opinions for all 14 of her listed medical providers:

> "The following healthcare providers, and/or the custodian of their records, may testify regarding the injuries sustained by the Plaintiff Jessica Perez in the incident made the subject of this suit, their medical diagnosis, prognosis and the reasonable and necessary cost of hospital, doctor and medical bills for treatment of his injuries in the past and in the future. **Please refer to the healthcare providers records for their mental impressions, opinions, conclusions, and the factual basis for each opinion**."

*Id.* at page 4.

5. On April 16, 2020, the oral and videotaped deposition of Dr. Leonard was completed.  On April 21, 2020, Defendants' counsel received a copy of the transcript from Dr. Leonard's deposition.  Attached to this motion as Exhibit "B" is a true and correct copy of the deposition transcript for Dr. Leonard.

6.     This Motion to Exclude the Testimony and Records of Plaintiff's Medical Providers Designated as Expert Witnesses includes a request to exclude the opinions and records of Dr. Michael Leonard on reliability grounds pursuant to Rule 702.  Pursuant to the Court's Scheduling Order, the deadline to file motions to challenge expert testimony pursuant to Rule 702 is within 11 days following receipt of the designated expert's report or within 11 days after obtaining a copy of the expert's deposition, whichever is later.[1]  Dkt. No. 7.  This Motion is filed within 11 days of Defendants' receipt of Dr. Leonard's deposition transcript, and thus, is timely.  *See id*.  Counsel for Defendants conferred with counsel for Plaintiff and confirmed this motion is opposed.

## II. GROUNDS FOR MOTION

7.     Plaintiff failed to properly disclose Dr. Michael Leonard as an expert witness in this lawsuit pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  Dr. Leonard is one of the treating medical providers for Plaintiff, Jessica Perez, and was identified as a non-retained expert.  However, the substance of his opinions and basis for the same, require he be disclosed as an expert witness pursuant to Rule 26(a)(2)(B).  Plaintiff's designation of Dr. Leonard as a non-retained medical provider is simply an attempt to circumvent the requirements outlined in Rule 26(a)(2)(B) for expert disclosure.  Plaintiff's failure to properly disclose Dr. Leonard as an expert witness was harmful and prejudicial to Defendants' ability to prepare its defenses in this suit, and thus, Dr. Leonard should be excluded as an expert witness in this case.

8.     Additionally, Dr. Leonard's medical causation opinions with respect to the subject accident and Plaintiff's alleged injuries are unreliable as he failed to provide a proper differential etiology which meets the standards outlined in *Daubert v. Merrell Dow Pharm, Inc.* and its progeny.  *See Daubert v. Merrell Dow Pharm, Inc*., 509 U.S. 579, 590-93 (1993).  Dr. Leonard's opinions on

---

[1] Defendants reserve the right to supplement or amend this motion in the event additional information is discovered concerning Dr. Leonard's opinions and conclusions in this lawsuit.

causation of Plaintiff's alleged injuries were not based upon a differential analysis in which he took into account other potential causes of the alleged injuries.  Rather, they were simply the product of his assumptions founded on temporal proximity and his review of her incomplete medical and personal history.

9.     In addition, Dr. Leonard's testimony as to the charges for Plaintiff's medical care is unreliable and fails to meet the standards for admission of expert testimony.  Any testimony provided by Dr. Leonard on this issue is wholly speculative, unreliable, and his opinions lack the foundation necessary for admission.  As such, testimony from Dr. Leonard on the reasonableness of the amounts charged for Plaintiffs' treatment should be prohibited.

### III. LEGAL STANDARD

#### A. Standard for Disclosure of Expert Testimony

10.     Federal Rule of Civil Procedure 26(a)(2) governs the rules pertaining to expert disclosures and reporting requirements.  Rule 26 requires parties to disclose the identity of any person who will provide expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A).  Rule 26(a)(2)(A)'s designation requirement applies to all testifying experts, including treating physicians.  *Hamburger v. State Farm Mut. Auto. Ins. Co*., 361 F.3d 875, 882-83 (5th Cir. 2004).  The parties must make their expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).   "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the proponent of the expert testimony must provide a written report prepared and signed by the witness.  Fed. R. Civ. P. 26(a)(2)(B).

11.     Although an expert report is generally not required for a treating physician to testify regarding treatment, such treating physicians enjoy a very narrow exception that allows them to

testify only as to their observations without producing an expert report. Where, however, the physician's testimony extends beyond that of a treating physician – such as to offer opinions on causation or future medical care, or relying on information from outside sources – an expert report is necessary. *See Rea v. Wisconsin Coach Lines, Inc.*, No. 12-1252, 2014 WL 4981803 (E.D. La. Oct. 3, 2014); *Tolliver v. U–Haul Co. of Texas,* 2011 WL 3626328, at *3 (W.D. La. Aug. 17, 2011) (not reported) ("[W]hen a physician's opinions do not encompass merely the ordinary care of a patient, such as opinions regarding his medical condition, diagnosis, prognosis, but extend to conclusions as to ultimate cause of the patient's conditions, an expert report is required. Here, Dr. Williams and Dr. Cobb intend to testify as to the cause of Mr. Tolliver's injuries, and the scope of this testimony extends beyond that of a treating physician. Thus, an expert report is required for those opinions."); *see also Shelton v. Wise*, Cause No. A–07–CA–063 RP, 2009 WL 10699993 *3 (W.D. Tex. Sept. 1, 2009) (citing numerous authority within and outside the 5th Circuit limiting treating physicians who have not filed expert reports to testimony concerning their treatment and contents of their records.).  If a treating physician relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B).  *LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 480 (E.D. La. 2013); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

12.     Failure to properly disclose expert testimony or identify an expert witness is grounds for exclusion of the expert witness.  Fed. R. Civ. P. 37; *Ogle v. Koorsen Fire & Sec., Inc.*, 336 F. Supp. 3d 874, 881 (S.D. Ohio 2018).  Specifically, Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

### B. Standard for the Admissibility of Expert Testimony

13.     Assuming the expert satisfied the report and disclosure requirements, the plaintiff still must

establish the admissibility of testimony under Article 702 of the Federal Rules of Evidence. The

party seeking to offer opinion testimony has the burden to "demonstrate that the expert's findings

and conclusions are based on the scientific method, and therefore, are reliable." *Turner v. Brunk*,

No. 15-286, 2016 WL 11190298 (M.D. La. Dec. 6, 2016), *quoting Moore v. Ashland Chemical,*

*Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)*; see also Rodriguez v. Riddell Sports, Inc*., 242 F.3d 567,

580 (5th Cir. 2001).

14.     Federal Rule of Evidence 702 permits experts to testify as to "scientific, technical, or other

specialized knowledge [that] will help the trier of fact to understand the evidence or determine a

fact in issue," if those opinions are deemed sufficiently reliable by the court as part of its gatekeeper

role. *See* Fed. R. Evid. 702.  Specifically, the rule evaluates reliability via a three factor test: "(1)

the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the expert has applied the principles and methods reliably to the

facts of the case." Fed. R. Evid. 702.

15.     Trial courts act as the gatekeepers of expert testimony.  *See Daubert*, 509 U.S. at 590-93;

*see also Seatrax, Inc. v. Sonbeck Int'l, Inc*., 200 F.3d 358, 371-72 (5th Cir. 2000).  If an expert's

testimony is challenged, the court conducts a preliminary fact-finding to determine if the expert is

qualified to provide his/her opinions and whether the substance of the testimony is both reliable

and relevant.  *See* Fed. R. Evid. 702; *see also* Fed. R. Evid. 104(a); *see also Kumho Tire Co. v.*

*Carmichael,* 526 U.S. 137, 141 (1999)*; Knight v. Kirby Inland Marine, Inc*., 482 F.3d 347, 352

(5th Cir. 2007).

16.     Even if the witness is qualified as an expert, the Court has the duty to determine whether the expert's opinions have the requisite reliability and relevance to be admissible. *Kuhmo Tire Ltd.*, 526 U.S. at 141. The ultimate goal of the "gatekeeping" requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152; *see also Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 584 (5th Cir. 2004). Expert testimony must be reliable "at each and every step" because "[t]he reliability inquiry applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Graham v. San Antonio Zoological Society*, 261 F.Supp.3d 711, 727-28 (W.D. Tex. 2017), citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

17.     Expert testimony reliant on "completely unsubstantiated factual assertions" is inadmissible. *See Hathaway v. Bazany*, 507 F.3d 312, 319 n. 4 (5th Cir. 2007); *Moore v. Intl. Paint, LLC*, 547 Fed.Appx. 513, 515 (5th Cir. 2013). When an expert's testimony is not based on facts in the record, but rather, on altered facts and speculation designed to bolster a party's position, the trial court should exclude it. *See Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *Moore*, 547 Fed.Appx. at 515. "A valid scientific theory misapplied because of the lack of sufficient factual foundation cannot be admitted because it does not assist and, indeed may ultimately confuse the fact finder." *Fairley v. Clarke*, No. 02-2219, 2004 WL 877102 at *5 (E.D. La. Apr. 22, 2004), *quoting Smithers v. C&G Custom Module Hauling*, 172 F.Supp.2d 765, 771 (E.D. Va. 2000).

### IV. ARGUMENTS & AUTHORITY

**A.  Dr. Leonard Should be Excluded as Plaintiff Failed to Comply with Federal Expert Reporting and Disclosure Requirements under Rule 26(a)(2)(B)**

18.     Dr. Leonard should be precluded from offering any expert testimony due to Plaintiff's failure to comply with the reporting requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Specifically, Plaintiff failed to produce a report with the complete set of opinions to be offered by Dr. Leonard in this case, and the facts considered to render the opinions.  In addition, Plaintiff failed to disclose and produce a list of all other cases in the previous four years in which Dr. Leonard testified as an expert at trial or by deposition and a statement of the compensation to be paid for his study and testimony in this case.  *See* Fed. R. Civ. P. 26(a)(2)(B). The expert report deadline came and went without the production of a proper expert disclosure pursuant to Rule 26(a)(2)(B).

19.     As further explained below, the opinions offered by Dr. Leonard during his deposition, and the sources of the same, triggered the requirements for a proper expert disclosure pursuant to Rule 26(a)(2)(B).  Testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of Rule 26(a)(2)(B).  *Rea v. Wis. Coach Lines, Inc*., No. 12-1252, 2014 WL 4981803, at * 2 (E.D. La. Oct. 3, 2014) (citations omitted); *Sheppard v. Liberty Mutual Ins. Co*., No. 16-2401, 2017 WL 467092, at * 2 (E.D. La. Feb. 2, 2017); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 825–26 (9th Cir.2011) (noting that other courts have considered causation testimony as outside the scope of treating physicians').  In addition, where physicians' testimony is prepared in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B).  *Rea,* 2014 WL 4981803, at * 2.

20.     In *Rangel v. Anderson*, 202 F. Supp. 3d 1361 (S.D. Ga. 2016)*,* the Southern District of Georgia dealt with a similar situation to the case at hand.  In *Rangel*, Plaintiff offered the testimony of a treating physician, Dr. Patrick Karl.  As in the instant case, Plaintiff <u>failed</u> to provide an expert

8

report under either Rule 26(a)(2)(C) or (a)(2)(B). Citing a hornbook, the Southern District summarized the Plaintiff's disclosure duties as follows:

> [T]he disclosures that must be made for a treating physician depend on the nature of the testimony he or she will give. Unless the treating physician is going to be limited to testifying about facts in a lay person capacity, the physician must be disclosed as an expert and **must provide either the summary disclosures or an expert report.** Whether the treating physician must file a written report or is subject only to summary disclosures depends on the role of the expert. If the treating physician's expert opinions stay within the scope of treatment and diagnosis, then the physician would not be considered "retained" to provide expert testimony and only summary disclosures would be needed. But if a treating physician is going to offer opinions formed outside the course of treatment and diagnosis, then as to those further opinions the physician is being used in a "retained expert" role and the Rule 26(a)(2)(B)'s report requirement will apply to the extent of that further testimony. **It is not sufficient for the summary disclosures to mention that the treating physician is going to offer these additional expert opinions.**
>
> The types of disclosures made will then determine the scope of testimony actually allowed. Treating physicians disclosed only as lay witnesses may testify only to lay facts. Treating physicians for whom summary disclosures are provided may opine on matters relating to treatment and diagnosis. **If the treating physician files an expert report, then the treating physician may testify as a retained expert to matters that go beyond treatment and diagnosis.**

*Id.* at 1365 (emphasis supplied).

21.     The plaintiff in *Rangel* argued her failure to properly disclose her treating physician was harmless, because "[defendant had ample opportunity to cure any surprise during Dr. Karl's deposition," and because she had identified Dr. Karl as her treating physician. *Id.* The court disagreed, noting that "even if a deposition of every expert were taken by Defendant as a matter of course, furnishing it with a woefully inadequate report adversely impacts upon its ability to prepare for and conduct the deposition." *Id.* at 1367. "[A]llowing parties to obviate the need to provide Rule 26(a)(2) disclosures and reports by simply making their experts available to be deposed would render the Rule meaningless. Moreover, Defendant is still in the dark as to much of the information required by Rule 26 because Plaintiff still has not provided an expert disclosure." *Id.* Ultimately,

the Court in *Rangel* properly excluded Dr. Karl from testifying, noting that Plaintiff had ample opportunity to realize that she was going to secure expert opinions from the doctor and thus to provide the appropriate report.

22.     During his deposition, Dr. Leonard was questioned by Plaintiff's counsel using the Texas Peace Officer's Crash Report to address the nature of the accident in question, and the ability for the same to cause Plaintiff's injuries.  Exhibit "B", page 11, lines 4 – page 12, line 7.  Specifically, Plaintiff's counsel solicited opinions from Dr. Leonard inquiring as to whether accidents such as the side swipe collision involving Plaintiff can cause spinal injuries.  *Id*.  However, Dr. Leonard acknowledged the police report is not something he would normally review or look at as part of the treatment or evaluation of a patient.  As a treating physician, a police report is something outside of the normal realm of what he would review in his normal practice as a neurosurgeon as it is not typically utilized during the treatment of a typical patient and was not provided to Dr. Leonard for the purpose of providing her care in this case.  *Id*. at page 37, line 24 - page 38 lines 1-14 and 22-25.

23.     In addition to Dr. Leonard's review of the police report during his deposition, Plaintiff's counsel met with Dr. Leonard before his deposition to prepare for the same and gave him a power point presentation to review.  *Id*. at page 36, line 24 – page 37, line 9.  This power point presentation was not produced to Defendants before the deposition, was not attached as an exhibit to Dr. Leonard's deposition, and has not been produced to Defendants to date.  The lack of prior production of this material to Defendants was highly prejudicial and rendered proper preparation for Dr. Leonard's testimony impossible.  Defendants only learned about Plaintiff counsel's power point presentation during the deposition, which Dr. Leonard reviewed and relied upon in providing his testimony.  *Id*.

24.     It is clear Dr. Leonard not only has been provided additional materials outside the scope of his treatment for Plaintiff, but he reviewed and ***relied*** upon these materials in providing his opinions in this case.  (emphasis added).  Although Plaintiff designated Dr. Leonard as a non-treating medical provider, it is clear Dr. Leonard is actually a Rule 26(a)(2)(B) witness, who should have provided a written report outlining the full extent of his opinions and facts relied upon for the same, as well as any exhibits that will be used to summarize his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B); *Rea*, 2014 WL 4981803 at *2; *Tolliver,* 2011 WL 3626328, at *3; *Shelton*, 2009 WL 10699993 at *3; *LaShip, LLC,* 296 F.R.D. at 475; *Goodman*, 644 F.3d at 826.  In addition, he should have produced a copy of his full trial and deposition testimonial history for the last four years, a list of all his qualifications and his publications authored in the prior ten years, and a statement of the compensation to be paid for the study and testimony in this case.  *See* Fed. R. Civ. P. 26(a)(2)(B).  In regards to his testimonial history, providing deposition testimony specifically is not an uncommon occurrence for him.  In fact, it is quite the opposite.  He estimates providing approximately 15 – 20 depositions per year for the last six to seven years.  Exhibit "B" at page 50, lines 1 – 15.  This is not the work of a "treating physician", but instead an expert witness who should not be considered anything but a Rule 26(a)(2)(B) expert as he regularly is called upon to provide expert testimony.

25.     As established above, Dr. Leonard's opinions are founded, at least in part, on information and material which he did not review or prepare in the course of treating Plaintiff.  *See* Exhibit "B" at page 36, line 24 – page 37, line 9; page 37, line 24 - page 38 lines 1 – 14 and 22 – 25.  Thus, Dr. Leonard is a Rule 26(a)(2)(B) expert witness who should have been designated in accordance with the requirements found in this rule.  *See Rea*, 2014 WL 4981803 at *2; *Tolliver,* 2011 WL 3626328, at *3; *Shelton*, 2009 WL 10699993 at *3; *LaShip, LLC,* 296 F.R.D. at 475; *Goodman*, 644 F.3d at

826.  Based upon the scheduling order and law, Plaintiff was aware of her obligation to provide a proper designation of expert witnesses by the applicable deadline.  Accordingly, as Plaintiff failed to produce an expert report for Dr. Leonard and the required additional materials required under Rule 26(a)(2)(B), the instant Motion should be granted, and an Order should be entered, precluding Dr. Leonard from testifying at the trial of this matter.

### B.  Plaintiff's Failure to Properly Disclose Dr. Leonard as an Expert Witnesses is Not Substantially Justified or Harmless

26.    In determining whether a failure to disclose is "substantially justified or harmless," the Fifth Circuit considers the following four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (*citing Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

27.    In regards to the first factor, there can be no reasonable or justifiable explanation for failing to properly disclose Dr. Leonard pursuant to Rule 26(a)(2)(B).  Plaintiff had ample opportunity and time to properly disclose Dr. Leonard pursuant to Rule 26(a)(2)(B).  Plaintiff presumably knew, or should have known, Dr. Leonard's opinions and the facts and methodology upon which he would render his testimony.  Specifically, Plaintiff knew or should have known the extent to which Dr. Leonard's testimony would involve opinions which go beyond the normal course of his treatment provided to Ms. Perez, namely an opinion as to the subject accident causing her alleged injuries.  Indeed, Plaintiff's counsel utilized a power point presentation during Dr. Leonard's deposition to elicit expert opinions, even though Plaintiff knew Dr. Leonard did not use the power point presentation during the course of his treatment of the Plaintiff.  In addition, Plaintiff's counsel solicited a causation opinion from Dr. Leonard based upon the police report for the accident, which

as Dr. Leonard admitted, is not something he would normally review as part of his treatment of a patient. As the law is clear on the proper manner in which to designate a treating physician such as Dr. Leonard who will provide a causation opinion, Plaintiff cannot offer a justifiable explanation for failing to properly disclose Dr. Leonard pursuant to Rule 26(a)(2)(B), and producing the required expert report and materials outlined in the rule.

28.    In regards to the second factor, the importance of any testimony from Dr. Leonard to support Plaintiff's claims does not trump the importance of adherence to the deadlines and standards set in the controlling Scheduling Order and Federal Rule of Civil Procedure 26. In evaluating the same factors as presented here, the court in *Hamburger v. State Farm Mut. Auto. Ins. Co*. explained the importance of proposed testimony cannot "singularly override the enforcement of local rules and scheduling orders." *Hamburger,* 361 F.3d at 883. Any asserted importance of the testimony to be offered by Plaintiff's treating providers underscores how critical it was for her to properly designated Dr. Leonard. *See id*. Plaintiff's failure to adhere to the standards set for a proper expert disclosure should not be excused simply because she asserts the importance of Dr. Leonard's testimony to prove causation of her injuries under Texas law.

29.    Rule 26's basic purpose is to prevent prejudice and surprise. Permitting Dr. Leonard to offer expert testimony at trial would only serve to prejudice Defendants. As explained above, Plaintiff's failure to properly designate Dr. Leonard pursuant to Rule 26(a)(2)(B) left Defendants without the full picture of his opinions and the basis for the same going into his deposition. Furthermore, Plaintiff's insufficient disclosure did not include the list of prior trial and deposition testimony for Dr. Leonard, his fee arrangement, his list of publications, or any exhibits he intended to rely upon for purposes of his opinions. All of these items could have been used on cross-examination with Dr. Leonard if they had been provided in accordance with a proper Rule

26(a)(2)(B) disclosure.

30.     Any argument from Plaintiff asserting the failure to properly disclose Dr. Leonard was harmless, is misplaced.  Specifically, the opportunity to depose Dr. Leonard does not cure the deficiencies in Plaintiff's attempted expert disclosure.  Litigants in federal court are entitled to the disclosures that are required to be made under Rule 26(a)(2)(B), and it is not incumbent on the opposing party to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client.  *State Auto. Mut. Ins. Co. v. Freehold Management, Inc*., Civil Action No. 3:16-cv-2255-L, 2019 WL 1436659 at *25 (N.D. Tex. March 31, 2019).

31.     Indeed, the purpose of Rule 26 to prevent prejudice and surprise was  not achieved through Plaintiff's insufficient disclosure of Dr. Leonard.   As the 11th Circuit in *Rangel* explained, "[A]llowing parties to obviate the need to provide Rule 26(a)(2) disclosures and reports by simply making their experts available to be deposed would render the Rule meaningless. *Rangel*, 202 F. Supp. 3d at 1367.[2]  Simply making Dr. Leonard available for deposition, does not displace with the need to properly disclose his opinions pursuant to Rule 26(a)(2)(B).

32.     Allowing Dr. Leonard to produce an expert report now would likely require him to be re-deposed, and for Defendants' own experts to respond to such report.  Expenses and resources necessary to undertake these tasks are not the burden to which Defendants should have to bear simply because of Plaintiff's failure to adhere to the Rule.  Furthermore, the limitations placed on Defendants' ability to prepare for Dr. Leonard's prior deposition, given the lack of necessary documentation, only highlights the prejudice placed on the defense in this case in allowing the

---

[2] The Eleventh Circuit was initially formed out of the Fifth Circuit and established on October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995.  Pursuant to the Reorganization Act, the Fifth Circuit was divided into two circuits, the Eleventh and the "new Fifth."  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

testimony from Plaintiff's expert. Accordingly, evaluation of the third factor clearly shows exclusion of Plaintiff's expert testimony is warranted.

33.     Although a continuance is certainly a matter within the Court's discretion in this case, the continuance alone, will not cure the prior insufficiencies with Plaintiff's expert designation, and will not erase the time and resources previously committed to deposing Dr. Leonard, without the availability of a proper disclosure, identifying all of his opinions and materials and facts relied upon for the same. As stated above, additional time for Plaintiff to cure the issues noted herein, will not dispose of the likely requirement for Dr. Leonard to be re-deposed or for Defendants' experts to have to respond to any new opinions from Plaintiff's expert, not previously disclosed. In sum, although additional time can in some respects address the various issues raised in this Motion, it cannot completely cure and eliminate prior time and effort committed by Defendants to preparing its defenses in this suit without the ability to review all of the necessary materials and information which should have been disclosed beforehand. As such, the availability of a continuance does not outweigh and override the need to exclude the testimony and records of Dr. Leonard. *See Hamburger*, 361 F.3d at 883-84 (concluding prejudice would result to defendant by not excluding expert testimony, and thus, allowing a continuance would do no more than to perpetuate the failure to satisfy the rules for disclosure of expert testimony).

### C. Dr. Leonard Should be Precluded from Offering Opinion Testimony on Causation Due to Insufficient Reliability

34.     Dr. Leonard should be excluded from offering any testimony regarding the cause of Plaintiff's alleged injuries in that his testimony fails the *Daubert* gate, which the Court should enforce as "gatekeeper". This is an independent issue from Dr. Leonard's improper disclosure discussed above. It is clear from Dr. Leonard's testimony he intends to offer opinions at trial as to the causation of Plaintiff's alleged injuries in this case, an issue which must be evaluated pursuant to the standards for

admissibility under Rule 702.  *Wilson v. Taser Intern., Inc.,* 303 Fed. Appx. 708, 713 (11th Cir. 2008) (explaining a treating physician's opinions on causation clearly fall within Federal Rule of Evidence 702's scope of 'scientific knowledge' and must satisfy *Daubert*).

35.     The law is clear that an opinion based on insufficient or erroneous information fails the reliability standard.  *See Paz v. Bush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009). Subjective opinions from an expert supported by nothing more than his credentials is not evidence which would support a judgment.  In other words, "the expert's assurances that he has utilized generally accepted scientific methodology is insufficient . . . . The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc*., 151 F.3d 269, 276 (5th Cir. 1998) (citations omitted); *see also General Electric Co. v. Joiner,* 522 U.S. 136 (1997) (nothing requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert as the court may conclude too great an analytical gap exists between the data and opinion proffered).  If an expert's opinion merely sets forth conclusions without any indication of how those conclusions were reached, the expert's opinions will be of no assistance to the trier of fact.

36.     In medical causation cases, the Fifth Circuit has stated an expert should consider and exclude other possible causes of injury when forming his or her opinion.  *See McNabney v. Lab Corp. of Am.*, 153 Fed. Appx. 293, 295 (5th Cir. 2005); *see also Lassiegne v. Taco Bell Corp.*, 202 F.Supp.2d 512, 522-523 (E.D. La. 2002) (finding multiple inconsistencies and omissions in the plaintiff's self-reported oral history did not provide the doctor with a sufficient factual basis to arrive at a reliable diagnosis).  In *McNabney v. Lab Corporation of America*, the Fifth Circuit concluded an expert's opinion on medical causation was unreliable where the expert failed to exclude other possible causes of injury, particularly because he was unaware of the plaintiff's

complete medical history. *See McNabney*, 153 Fed. Appx. at 295.

37.     In the context of assessing a physician's opinions as to causation, the *Rangel* court highlighted the importance of a doctor performing a **differential analysis** in order to rule out other causes of injury.  Such an inquiry is necessary to satisfy *Daubert's* requirement that the opinion be based on "sufficient facts or data."  *Rangel*, 202 F.Supp. at 1370, *analyzing Cooper v. Marten Transport, Ltd*., 539 Fed. Appx. 963, 967 (11th Cir. 2013).   In order to complete a reliable methodology for determining causation, it is essential the treating physician (1) have a complete picture of the plaintiff's health history and (2) account for other possible causes of the plaintiff's claim.   The Eleventh Circuit has held that medical causation experts have a responsibility to perform a "differential etiology," defined as "a medical process of elimination whereby the possible causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining."  *Cooper*, 539 Fed.Appx. at 967.  Where a medical causation expert merely offers only his or her own *ipse dixit*—even if the doctor has met with the patient and conducted a review of the patient's medical history and chart—the opinion remains unreliable; especially if it is based on a mere temporal relationship rather than a proper differential analysis eliminating all other potential causes.  *Id.*  In *Cooper*, the Eleventh Circuit upheld the exclusion of Plaintiff's causation experts because neither had provided the proper differential analysis and thus could not pass the *Daubert* gate. *Id.*

38.     In addition, the Fourth Circuit has held a "differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation."  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999). "[I]f an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the

expert's testimony." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001).

39.      In addressing the scope of Dr. Leonard's evaluation, it is clear there are numerous relevant items and pieces of information which Dr. Leonard did not review prior to rendering his opinions. Specifically, he did not review the medical records from Guadalupe Regional Medical Center in Seguin, Texas, a facility at which Plaintiff treated two days following the accident, and the first medical facility Plaintiff treated with for any purpose following the accident.   Interestingly enough, Dr. Leonard provided an opinion as to the reasonableness and necessity of medical expenses incurred for Plaintiff at this facility as he *assumed* care provided at this facility was for the alleged injures in this suit.   Despite this assumption, he did not actually take the time to review the medical and billing records from this hospital, which by his own assumption, provided treatment related to Plaintiff's alleged injuries.   *See* Exhibit "B" at page 58, line 3 – page 60, line 4; *see also* page 82, lines 12 – 15.

40.      What makes Dr. Leonard's omission even more troubling is the fact he was unaware Plaintiff's medical records from Guadalupe Regional Medical Center do not contain any complaints made by Plaintiff related to her neck two days following the accident.   *Id*. at page 142, line 11 – page 143, line 18.   Dr. Leonard admitted information contained in emergency room records two days following the accident "could potentially be helpful" in his evaluation of Plaintiff's alleged injury to her cervical spine.   *Id*. at page 58, lines 18 – 19.   As he did not review these records, he simply had no idea that Plaintiff did not make ***any*** complaints of neck pain at Guadalupe Regional Medical Center two days after the accident.   *Id*. at page 103, line 23 – page 104, line 3.   Information related to Plaintiff's medical care provided two days after the accident, which Dr. Leonard admitted "could be potentially helpful" in his analysis, simply was not taken into consideration at all in formulating his opinions.   *See id*.

41.     Unfortunately, Dr. Leonard's failure to review all of Plaintiff's medical records was not limited to just one provider.  Dr. Leonard also does not recall reviewing any medical records for the Plaintiff from her gynecologist, Dr. Reddy, whom she treated with shortly after the subject accident.  Exhibit "B" at page 144, line 8 – page 147, line 12.  In addition, he did not receive a complete copy of all records from Perry Chiropractic Clinic related to Ms. Perez.  Specifically, Dr. Leonard denied reviewing any documentation provided by Perry Chiropractic Clinic with respect to their office seeking approval from Plaintiff's counsel for Ms. Perez to undergo an MRI.  *Id*. at page 159, line 7 – page 163, line 15.  Documentation to this effect was obtained by Defendants through deposition by written questions served to one of Plaintiff's medical providers, American Dynamic Imaging.  Please see attached as Exhibit "C", a true and correct copy of this specific correspondence, bates labeled page 4 and dated November 8, 2017.  This document was noticeably absent from materials sent by Perry Chiropractic Clinic to Dr. Leonard, and further illustrates the unreliability of Dr. Leonard's opinions which were based on an incomplete picture of Plaintiff's medical care.

42.     In addition to his failure to review any of Plaintiff's records from Guadalupe Regional Medical Center, or a complete set from Perry Chiropractic Clinic, Dr. Leonard does not recall being made aware of two prior motor vehicle accidents Plaintiff was involved in before the subject accident in this case.  *Id*. at page 85, line 24 - page 86, line 6.  Plaintiff confirmed the two prior accidents during her deposition, which clearly were not conveyed to Dr. Leonard during the course of his treatment.  Please see attached as Exhibit "D", a true and correct copy of an excerpt from the deposition of Plaintiff, Jessica Perez, at page 35, line 7 – page 44, line 24.   Dr. Leonard's failure to take into account the complete medical history of Plaintiff following this accident, as well as the complete personal history of Ms. Perez, especially as it pertains to her prior accident

history, is the type of scenario in which Courts have made clear the purported expert opinions are unreliable and do not pass the *Daubert* gate.  *See Paz*, 555 F.3d at 389; *McNabney*, 153 Fed. Appx. at 295; *Lassiegne*, 202 F.Supp.2d at 522-523.

43.     Furthermore, Dr. Leonard did not review any repair estimates, deposition transcripts, written statements, discovery materials, photographs, or expert reports in evaluating Plaintiff's alleged injuries.  *Id*. at page 83, line 21 - page 84, line 22.  He does not know the dynamics of the motion of the vehicles in the accident other than it was a "side-swipe".  *Id*. at page 87, lines 9-23. He is also unaware of the forces involved or exerted upon the vehicles in the accident.  *Id*.  page 87, line 24 - page 88 line 2.

44.     The methodology used by Dr. Leonard in rendering his opinion on causation is to essentially address the following three questions: (1) Is the injury in question "reasonably plausible"?; (2) Is there a temporal relationship?; and (3) Is there a more plausible cause for the symptoms?  *Id*. at page 88, line 9 – page 91, line 11.  Dr. Leonard testified he utilized a standard of reasonable plausibility in addressing the first question, which is admittedly a "very low" standard for medical plausibility.  *Id*. at page 92, lines 2-12.

45.     From review of Dr. Leonard's testimony, as well as the legal authority concerning the admissibility of a medical causation opinion, it is clear Dr. Leonard failed to perform a proper differential analysis, rendering his opinion on causation legally unreliable and inadmissible.  Dr. Leonard did not perform a differential analysis in which he excluded the Plaintiff's two prior auto accidents, as he admittedly could not recall being made aware of the same.  In addition, he was unaware of additional medical treatment undertaken by Plaintiff following the accident, and consequently, did not review records from such treatment to evaluate and compare Plaintiff's

symptoms reported to Guadalupe Regional Medical Center and Dr. Reddy, to that reported to her other providers.

46.    Dr. Leonard's reliance upon the temporal proximity of the reported symptoms in relation to the accident is insufficient to support a causal conclusion.  The law is clear a temporal correlation (if any) does not prove a causal relationship and cannot be used as a substitute for science-based causation evidence.  *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009).   Simply put, correlation is not causation.   *Huss*, 571 F.3d at 459; *see also, Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275-276 (E.D. La. 2014).

47.    Reliance on such temporal causation has been held to be an impermissible "leap of faith," insufficient to reliably support an opinion on causation.  *See Jenkins v. Slidella, LLC*, No. 05-370, 2008 WL 2649510 at *6 (E.D. La. June 27, 2008).   Drawing such a conclusion from temporal relationships leads to the *post hoc ergo propter hoc* fallacy.  The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence.  It literally means, "after this, because of this," and makes an assumption based on the false inference that a temporal relationship proves causation. *Huss*, 571 F.3d at 459, *quoting with approval, McClain v. Metabolife Intl.*, 401 F.3d 1233, 1243 (11th Cir. 2005).  Dr. Leonard's reliance upon the temporal proximity of the reported symptoms in relation to the accident is insufficient to support a causal conclusion and renders his testimony unreliable and inadmissible.

48.    Failure to employ a differential etiology renders the expert's opinion unreliable within the contemplation of *Daubert*.  *See McNabney*, 153 Fed. Appx. at 295; *Cooper,* 539 Fed. Appx. at 967. Dr. Leonard's attempt to assess causation of Plaintiff's alleged injuries clearly lacked relevant information regarding her prior accident history and the first treatment she sought of any kind following the accident with Defendants.  There is no doubt this information would have been

pertinent to a proper differential analysis.  Dr. Leonard's methodology is inherently flawed in its reliance on a temporal proximity as a key element to determine medical causation.  However, even if it were assumed temporal proximity was a proper factor to be considered, Dr. Leonard's opinion is still unreliable as he admittedly failed to review treatment records closest in time to the accident from Guadalupe Regional Medical Center.  Accordingly, Dr. Leonard's attempt to offer testimony on the causation of Plaintiff's alleged injuries fails to meet the standards for admissibility and should be excluded.

### D. Dr. Leonard's Opinions Regarding the Medical Expenses Charged to Plaintiff are Unreliable and Do Not Have a Proper Foundation

49.    Dr. Leonard's opinions regarding the expenses charged for Plaintiffs' care lack the requisite facts or data required under Rule 702 to support admission from an expert witness.   As with the objection raised to the reliability of Dr. Leonard's causation opinion discussed in section C., the objections explained in further detail below concerning Dr. Leonard's opinions is also an independent issue from Dr. Leonard's improper disclosure addressed in section A.

50.    Defendants acknowledge it is not uncommon for a plaintiff's treating physician to be permitted to testify about the reasonableness of the expenses incurred as a result of the treatment he or she provided, assuming such an opinion has been disclosed.  *See, e.g.*, *Hussaini v. Marine Transport Lines, Inc.*, 158 F.3d 584, 1998 WL 648590 at *3(5th Cir. 1998); *Maluff v. Sam's East, Inc.*, Case Number: 17-60264-CIV-MORENO, 2017 WL 5290879, at *3 (S.D. Fla. Nov. 9, 2017).  However, as made clear in Dr. Leonard's deposition, his opinions regarding the reasonableness of the charges submitted are nothing more than mere conjecture, based upon a simple belief that the charges submitted are fair prices for Plaintiff's services.   Specifically, Dr. Leonard testified Foundation Surgical Hospital, the facility at which Plaintiff underwent her surgery with Dr. Leonard, submitted charges which were reasonable based upon his familiarity with what other

hospitals in the general area charge.  He concluded Foundation Surgical Hospital's charges are consistent with other hospitals.  Exhibit "B" at page 104, lines 15 – 20.  However, Dr. Leonard has no documents to support his contentions that the charges at Foundation Surgical Hospital are in line with hospitals in Bexar County.  *Id*. at page 107, lines 4 – 8.

51.     In addition, Dr. Leonard did not review the actual itemization of the charges for Ms. Perez' medical expenses from Foundation Surgical Hospital prior to providing his opinion such charges were reasonable. He simply provided an opinion based on the "totality of the charges."  *Id*. at page 110, lines 2 – 24.  In fact, Dr. Leonard has not been provided any listing of the medical expenses for Ms. Perez' treatment to formulate his opinion that these charges were reasonable.[3]  *Id*. at page 110, line 25 - page 111, line 10.

52.     Despite providing opinions the charges from Perry Chiropractic Clinic, one of Plaintiff's treating providers, were reasonable, Dr. Leonard admitted he has not seen the specific billing records and entries for this facility, and thus did not review the charges to assess their reasonableness before providing his opinions.  *Id*. at page 152, lines 14 – 24.

53.     Dr. Leonard provided an opinion on the reasonableness and necessity of charges for medical treatment at Guadalupe Regional Medical Center, a facility in Seguin, Texas which Plaintiff treated at two days following the accident.  However, this opinion was based upon an *assumption* care rendered at this facility related to her alleged injuries  in this suit.  Dr. Leonard did not review the records from Guadalupe Regional Medical Center to provide an opinion as to

---

[3] It should be further noted Dr. Leonard was unable to offer any testimony as to who actually paid the amount of $18,000.00 to Foundation Surgical Hospital for Plaintiff's cervical spine surgery. As addressed with Dr. Leonard during the deposition, a representative for Foundation Surgical Hospital stated in her responses to deposition by written questions that Jessica Perez made this payment. Dr. Leonard was unable to provide confirmation of this information, and was unable to explain the inconsistency between the aforementioned written response from Foundation Surgical Hospital and the denial from Plaintiff in her deposition as to making any payments for her treatment in this case. Exhibit "B" at pages 73, line 9 – page 82, line 1.  As such, additional discovery may be necessary to address this issue and determine if there is an unknown third-party interest involved in this case.

the reasonableness and necessity of this treatment before rendering this opinion.  Exhibit "B" at page 58, line 20 – page 59, line 25.

54.      To further highlight the disconnect between the charges submitted for Plaintiff's care, and Dr. Leonard's opinions, Dr. Leonard denied charging for amino matrix in connection with Plaintiff's surgery performed at Foundation Surgical Hospital or even knowing what it is, despite it being one of the itemized charges on Plaintiff's billing record from this facility.  *Id.* at page 129, lines 9 – 13; see also Exhibit "E" – a true and correct copy of the billing records from Foundation Surgical Hospital.

55.      Dr. Leonard acknowledged he has no documentation to support the opinion it is reasonable for a medical practice to charge $20,000 for a physician's assistant, who is not a medical doctor, to assist in the cervical surgery performed by Dr. Leonard in this case.  Exhibit "B"  at page 168, line 8 - page 170, line 14.  Dr. Leonard also has no written documents to support the position Alamo Neurosurgical Institute's charges of $64,000 are reasonable for the cervical procedure performed on Ms. Perez.  *Id.*  at page 132, line 22 – page 133, line 4.

56.      Furthermore, if the lack of any foundational support for his opinions on medical expenses was not made clear enough, Dr. Leonard testified he included technology in the procedure performed on Plaintiff that is not allowed at other facilities in San Antonio.  Specifically, Dr. Leonard explained the restrictions he encounters concerning the type of technology he can use when performing surgery.  He testified most hospitals in San Antonio will not allow him to perform certain procedures such as stem cell harvesting/injections during surgery.  In an effort to control costs, hospitals in the county limit technology and equipment physicians can use during surgery.  *Id.* at page 117, line 14 – page 118, line 7.  In addition, some hospitals in Bexar County determined some of the procedures Dr. Leonard performs are not a reasonable cost and not financially

beneficial for these facilities to provide these services. *Id.* at page 119, line 19 - page 120 line 6.

57.     Despite the limitations routinely placed on Dr. Leonard by many of the hospitals in San Antonio given the cost of his proposed surgeries, Dr. Leonard seeks to offer an opinion in this case the cost of surgery performed on Plaintiff, Jessica Perez, which included stem cell harvesting, was reasonable and customary in this region.  It is simply incorrect and unreliable to opine the cost of a procedure which is prohibited from being performed at most of the facilities in San Antonio, by Dr. Leonard's own admission, is reasonable and customary in this region.  This opinion lacks the necessary foundational support for admissibility.

58.     Simply put, Dr. Leonard's opinions are clearly not the product of any reliable principles or methods, and consequently, Dr. Leonard failed to apply any principles or methods to the facts of this case.  Accordingly, his opinions fail to meet any of the criteria laid out in Rule 702.  *See* Fed. R. Evid. 702; *see also General Electric Co. v. Joiner,* 522 U.S. 136, 137 (1997) (nothing requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert as the court may conclude too great an analytical gap exists between the data and opinion proffered).

59.     Given his admitted lack of knowledge regarding the basis of the charges submitted for Plaintiff's care, Dr. Leonard's opinions regarding the reasonableness of the charges submitted for Plaintiff's care lack the necessary foundation for the admission of expert testimony.  *See* Fed. R. Evid. 702.  Therefore, his testimony should be limited to prohibit any efforts to support the alleged reasonableness of the medical expenses charged for medical care provided to the Plaintiff.  *See United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *Mac Sales, Inc. v. E.I. du Pont de Nemours & Co.*, 24 F.3d 747, 752 (5th Cir. 1994).

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this Motion to Exclude the Testimony and Records of Plaintiffs' Designated Expert Witnesses Michael Leonard, M.D. be granted in its entirety, excluding for all purposes the testimony and records of Michael Leonard, M.D., and for such other and further relief to which these parties are justly entitled.

Respectfully submitted:

**THORNTON, BIECHLIN,
REYNOLDS & GUERRA, L.C**
100 N.E. Loop 410, Suite 500
San Antonio, TX  78216
Telephone:     (210) 342-5555
Facsimile:      (210) 525-0666

BY _____
R. Sean Page
Federal ID No. 00784713
Texas Bar No. 00784713
spage@thorntonfirm.com
Jeffrey K. Finley
Federal ID No. 24062484
Texas Bar No. 24062484
jfinely@thorntonfirm.com
**Attorneys for Defendants**

## CERTIFICATE OF CONFERENCE

The undersigned certifies he conferred with counsel for Plaintiff regarding this motion and counsel for Plaintiff advised his client opposes the motion.

_____
Jeffrey K. Finley

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above and foregoing instrument has been properly delivered pursuant to the Federal Rules of Civil Procedure, on May 1, 2020, to the following counsel of record:

**DAVIS LAW FIRM**
Robert O. Fischel
10500 Heritage Blvd., #102
San Antonio, Texas 78216

_____
Jeffrey K. Finley