# Exhibit "A"

# Commercial Vehicle Forensics, LLC
**Truck Accident and Safety Experts**



December 23, 2019

Mr. Robert O. Fischel
The Davis Law Firm
10500 Heritage Blvd.
Suite 102
San Antonio, TX  78216

Reference:     Perez v. Alvin Boecken, et al.
Our File No.:  2019041

Dear Mr. Fischel:

This letter shall represent my preliminary report and reflect my initial opinions and conclusions with regard to the above entitled matter after reviewing the following case file documents and materials.  My opinions and conclusions are based upon my training, skill, experience, education, and knowledge and to a reasonable degree of probability in the trucking industry.

Enclosed is a list of the recent case file documentation that I have received and reviewed to develop my opinions and conclusions:

1.  The Texas Peace Officer's Crash Report, dated 10/19/17.

2.  Deposition of Alvin Boecken.

3.  Deposition of Jessica Perez.

4.  Defendant's bates stamped documents pages 1-118, and 155-161.

5.  Photographs of Defendant and Plaintiff's vehicles.

6.  The Texas Commercial Motor Vehicle Drivers Handbook ("CDL Manual").

Commercialvehicleforensics.com 180 E. Ezell Ln., Payson, AZ 85541 602-908-4559

Page 2

7. The Federal Motor Carrier Safety Regulations ("FMCSR's").

## *Opinions and Conclusions:*

1. Mr. Boecken had an obligation to maintain a proper lookout at all times while operating his Commercial Motor Vehicle ("CMV").

2. Mr. Boecken had an obligation to effectively manage the space around his CMV at all times while under operation.

3. Mr. Boecken had an obligation to initiate a safe lane change at all times while operating his CMV.

4. CAB Transport had an obligation to qualify Mr. Boecken as a commercial driver in accordance with the FMCSR's.

## *Discussion:*

According to the accident report, this collision occurred on October 19, 2017 at approximately 7:47 pm in the city of New Braunfels, Texas. Both vehicles were traveling northbound in the 1200 Block of northbound Interstate 35 near Walnut Avenue with Ms. Perez in the far-right lane and Mr. Boecken in the lane to the left of Ms. Perez. The investigating officer, Officer Engel, reported that Mr. Boecken changed lanes when unsafe and struck the Perez vehicle on the driver's side.

Maintaining a proper lookout for other traffic is essential for the safe operation of a CMV and for the welfare and safety of the motoring public. Mr. Boecken testified that he looks in his mirrors every 3-5 seconds on a usual basis to keep track of other traffic; yet, his description of the events that led to the collision render his testimony rather incredible and are inconsistent with the damage to the Perez vehicle and Ms. Perez testimony.

According to his testimony, a blue Toyota was in the lane to his left and cut in front of his tractor; however, the first time Mr. Boecken observed the alleged Toyota, not knowing where it came from, when it was just ahead of his cab on the left and was cutting over in front of him and traveling 10 mph faster than his truck. Ms. Perez, on the other hand, testified that there was no other vehicle ahead of the Boecken CMV just prior to the time of the collision.

Page 3

Mr. Boecken then says that the Toyota applied the brakes, so in response, he applied hard braking, looked in the mirror to check for traffic in the right lane, turned on his turn signal and moved right never making contact with the rear of the Toyota.

Ms. Perez's vehicle currently was in the right lane next to the cab of Mr. Boecken's truck and slightly ahead, a position she attained, according to her testimony, after having been in the right lane for some distance when Mr. Boecken's CMV came along side of her. She testified that not willing to remain alongside Mr. Boecken's truck, she began to accelerate, gaining a position just past the front bumper when Mr. Boecken chose to change lanes. Mr. Boecken testified that never, at any time prior to the collision, did he observe the presence of the Perez vehicle. Only when the collision occurred did he realize that Ms. Perez was occupying the lane next to him during his lane change maneuver.

Had Mr. Boecken been checking his mirrors every 3-5 seconds, as he testified to, he would have readily seen the approach of the alleged Toyota passing him on his left. Since Mr. Boecken never observed the Perez vehicle at any time prior to the collision, Ms. Perez's testimony of her placement on the highway leading up to the mishap is undisputable; therefore, Mr. Boecken would have been able to clearly observe her vehicle as he approached in the lane to her left and should have known that her vehicle was alongside his CMV prior to moving right.

Mr. Boecken testified that he was employing 'hard' braking when he made contact with the left side of the Perez vehicle; yet, the damage to the side of the Perez vehicle indicates that both vehicles were engaged with one another for a period of time at nearly the same speed since there is no repeated circular pattern overlapping damage forward or rearward displayed on the side of the car indicating one vehicle was traveling faster or slower than the other from contact with the lug nuts on the right front steer wheel of the Boecken tractor.

It is apparent that this collision was as a result of Mr. Boecken failing in his obligation to properly manage the area around his CMV while under operation by not keeping a proper lookout at all times and making an unsafe lane change.

Page 4

The police report had listed a USDOT number for CAB Transport, the trucking company that employed Mr. Boecken. As such, they are a motor carrier by regulation standard and have certain responsibilities and requirements as an employer to qualify Mr. Boecken as a commercial driver. Even though there is an 'independent contractor' form filled out and signed by Mr. Ballard and Mr. Boecken, under the FMCSR's, Part 390.5 (Definitions), clearly addresses the fact that Mr. Boecken is an employee of CAB Transport. It states that "*Employee* means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (**including an independent contractor** while in the course of operating a commercial motor vehicle). After reviewing the documents submitted by Defendants, there are several violations of the FMCSR's that were committed by the company.

Federal regulation under Part 391.11 (Driver Qualification) says in part that "A person ***shall not drive*** a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle." Subsection b says "a person is qualified to drive a motor vehicle if he can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives." Not only does a commercial driver need to possess a valid Commercial Driver License ("CDL"), the employer must assess his ability and knowledge in terms of safe driving behavior through the exercise of a road test where the employee can demonstrate his safe driving skill. CAB Transport did not either offer or administer a road test to Mr. Boecken during his hiring process.

FMCSR's Part 391.21 (Application for Employment) says in part that "a person ***shall not drive*** a commercial motor vehicle unless he/she has completed and furnished the motor carrier that employs him/her with an application for employment that meets the requirements of this section." I have discovered no application for employment on behalf of CAB Transport that had been filled out and submitted by Mr. Boecken.

Part 391.23 (Investigations and Inquiries) states that "each motor carrier shall make the following investigations and inquiries with respect to each driver it employs; an inquiry, within 30 days of the date the driver's employment begins, to each State where the driver

Page 5

held or holds a motor vehicle operator's license or permit during the preceding 3 years to obtain that driver's motor vehicle record; an investigation of the driver's safety performance history with Department of Transportation regulated employers during the preceding three years." There is no documentation to reflect the company's obligation as required to the above.

FMCSR's Part 382.301 (Pre-employment testing) states that "Prior to the first time a driver performs safety-sensitive functions for an employer, the driver shall undergo testing for controlled substances as a condition prior to being used." The pre-employment drug test document in Defendant's file is dated 7/20/15, more than 7 years after Mr. Boecken was hired in 2008.

There is little doubt that CAB Transport was in violation of several Federal regulations concerning the qualification of Mr. Boecken as a commercial driver. In fact, although Mr. Boecken is required to be familiar with the regulations, his testimony is that the FMCSR's are only guidelines, not regulations to abide by.

In summary, CAB Transport allowed an unqualified and unsafe driver to operate a CMV on their behalf. Mr. Boecken had an obligation to operate his CMV in a safe manner and failed in that obligation. As a result, both CAB Transport and Mr. Boecken consciously disregarded the safety and welfare of the motoring public creating a risk of serious injury or death should a collision occur.

All of my opinions and conclusions in this report are to a reasonable degree of professional certainty, and I reserve the right to supplement this report and to refine or expand my opinions as they relate to my analysis based upon any information I obtain after the date of this report.

Respectfully,

Kerry V. Nelson
Truck and Safety Consultant