**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JESSICA PEREZ, INDIVIDUALLY AND | § | |
| AS NEXT FRIEND OF KH AND MH, | § | |
| MINOR CHILDREN, | § | SA-19-CV-00375-XR |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| ALVIN BOECKEN, JIM BALLARD, | § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Defendants' Motion to Exclude the Testimony and Records of Plaintiff's Designated Expert Witness Michael Leonard, M.D. (ECF No. 45), Plaintiff's Response (ECF No. 49), and Defendants' Reply (ECF No. 58); Defendants' Motion to Limit the Testimony of Plaintiff's Designated Expert Witness Kerry V. Nelson (ECF No. 50); Plaintiff's Motion to Strike Retained Defense Witness Christine Dickison (ECF No. 51) and Defendants' Response (ECF No. 59); and Plaintiff's Motion to Strike or Limit the Testimony of Retained Defense Witness Warren Neely, M.D. (ECF No. 52) and Defendants' Response (ECF No. 60). After careful consideration, the Court issues the following order.

## BACKGROUND

This case is brought by Plaintiff Jessica Perez, on her own behalf and on behalf of her minor children ("Plaintiff"), for damages arising from a motor-vehicle collision. Plaintiff alleges that on October 19, 2017, Plaintiff was lawfully operating her vehicle when she was struck by a commercial motor vehicle driven by Defendant Alvin Boecken ("Boecken"). ECF No. 1 ¶ 6. According to Plaintiff, Boecken "changed lanes into Plaintiff," striking her and causing the

1

collision and Plaintiff's injuries and damages.  *Id.*  Plaintiff claims that Boecken was operating the commercial vehicle in the course and scope of his employment with Defendant Jim Ballard d/b/a CAB Transport ("CAB Transport").  *Id.*  Plaintiff's minor children Keegan Hillsman and Morgan Hillsman were passengers in Plaintiff's car at the time of the collision.  *Id.*  Plaintiff claims that she suffered severe and permanent bodily injuries as a direct and proximate result of the collision. *Id.* ¶ 8.  Plaintiff also claims her injuries have caused her physical and mental condition to deteriorate and will in reasonable probability cause her to suffer deterioration in the future.  *Id.*  Plaintiff alleges she incurred the following damages:

        a)  Reasonable medical care and expenses in the past…;
        b)  Reasonable and necessary medical care and expenses…in the future;
        c)  Physical pain and suffering in the past;
        d)  Physical pain and suffering…in the future;
        e)  Physical impairment in the past;
        f)  Physical impairment…in the future;
        g)  Lost wages in the past;
        h)  Loss of earning capacity…which will…be incurred in the future;
        i)  Mental anguish in the past;
        j)  Mental anguish which will…be suffered in the future;
        k)  Fear of future disease or condition;
        l)  Disfigurement;
        m) Cost of medical monitoring and prevention in the future; and
        n)  Loss of household services.

*Id.* ¶ 9.  Plaintiff also seeks exemplary damages.  *Id.* ¶ 12.  Plaintiff brings various claims sounding in negligence against both Defendants.

        Pursuant to the Scheduling Order in this case (ECF No. 7) and agreed-upon extensions granted by the Court, Plaintiff's deadline to file her designation of testifying experts and serve the materials required by Federal Rule of Civil Procedure 26(a)(2)(B) was December 23, 2019.  *See* Text Order dated December 18, 2019 (extending expert designation deadlines).  Defendants' deadline for the same was January 24, 2020.  *Id.*  The deadline for filing supplemental reports

required under Federal Rule of Civil Procedure 26(e) was February 4, 2020.  ECF No. 7.  Both

Plaintiff and Defendants timely filed their expert designations.  ECF Nos. 36, 38.

Defendants now seek to exclude or limit the testimony of two of Plaintiff's designated

expert witnesses: Dr. Michael Leonard, M.D. and Kerry V. Nelson.  ECF Nos. 45, 50.  Plaintiff,

in turn, seeks to strike or limit the testimony of two of Defendants' designated experts: Christine

Dickison and Dr. Warren Neely, M.D.  ECF Nos. 51, 52.

## DISCUSSION

### I.   Legal Standards

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert"

to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the
>     trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
>     case.

FED. R. EVID. 702.  The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining the admissibility of

expert testimony.  *Daubert* requires the district courts to act as "gatekeepers" to ensure expert

testimony meets Rule 702's standards.  *Id.* at 589.  As a preliminary matter, a district court "must

be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill,

experience, training, or education.'"  *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009)

(quoting FED. R. EVID. 702).  If the expert is qualified, a court must follow *Daubert*'s analytical

framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant

to the task at hand."  *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable. These factors are: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F. 3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.

In determining the admissibility of expert testimony, the district court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the

challenged expert testimony is admissible.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

## II.    Analysis

### a.   Dr. Michael Leonard, M.D.

Plaintiff designated Dr. Michael Leonard, M.D. ("Leonard") as a non-retained expert witness.  ECF No. 36.  Leonard is a board-certified neurosurgeon who specializes in conditions of the spine.  Dep. of Michael Leonard 8:14–16, 9:2–4, ECF No. 45-2 (hereinafter, "Leonard Dep.").  Leonard treated Plaintiff for neck pain following the collision at issue in this case, beginning on September 5, 2018.[1]  According to Plaintiff's expert designation, Leonard is one of Plaintiff's "treating medical providers" who "may testify regarding the injuries sustained by [Plaintiff] in the incident made the subject of this suit, their medical diagnosis, prognosis and the reasonable and necessary cost of hospital, doctor and medical bills for treatment of his [sic] injuries in the past and in the future."  ECF No. 36 at 4.  Plaintiff's expert designation also directs its readers to "refer to the healthcare providers [sic] records for their mental impressions, opinions, conclusions, and the factual basis for each opinion."  *Id.*  Leonard was deposed on April 16, 2020.  *See generally* Leonard Dep.

Defendants move to exclude Leonard's testimony and records on three grounds: (1) Plaintiff failed to properly disclose Leonard as an expert witness under Federal Rule of Civil Procedure 26(a)(2); (2) Leonard's opinions on the cause of Plaintiff's injuries are unreliable under *Daubert*; and (3) Leonard's opinions on the reasonableness of Plaintiff's medical expenses are unreliable and inadmissible.  For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Exclude (ECF No. 45).

---

[1] The Court notes that the collision at issue in this case occurred on October 19, 2017.  Plaintiff admits that her first visit with Leonard was nearly a year later, on September 5, 2018.  ECF No. 49 at 8.

> *i. Should Leonard's testimony be excluded for Plaintiff's failure to comply with Rule 26?*

First, Defendants argue Plaintiff's disclosure of Leonard was insufficient to satisfy Rule 26, and that this is grounds for exclusion of Leonard's testimony in its entirety under Rule 37.  *Id.* ¶ 12.  The required disclosure of expert witnesses under Rule 26 differs depending on the characterization of the witness: if he is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then Rule 26(a)(2)(B) requires the disclosure include a written report.  FED. R. CIV. P. 26(a)(2)(B).  The expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*  If the witness is not required to provide a written report under Rule 26(a)(2)(B), the disclosure of the witness must still state: (i) the subject matter on which the witness is expected to present evidence, and (ii) a summary of the facts and opinions to which the witness is expected to testify. FED. R. CIV. P. 26(a)(2)(C).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

Plaintiff disclosed Leonard as a "non-retained expert" and a "treating medical provider," purportedly under Rule 26(a)(2)(C), and so did not provide the materials required under Rule

26(a)(2)(B).  Defendants argue that "[a]lthough an expert report is generally not required for a treating physician to testify regarding treatment," Leonard's deposition testimony "extends beyond that of a treating physician" and "triggered the requirements for a proper expert disclosure pursuant to Rule 26(a)(2)(B)."  ECF No. 45 ¶¶ 11, 19.  Specifically, Defendants take issue with Leonard's reliance on a Texas Peace Officer's Crash Report to form his opinions as to causation, and with Leonard's meeting with Plaintiff's counsel and reviewing a PowerPoint presentation before testifying as to both causation and Plaintiff's medical expenses.  *Id.* ¶¶ 22–24.  "Dr. Leonard's opinions are founded, at least in part, on information and material which he did not review or prepare in the course of treating Plaintiff."  *Id.* ¶ 25.  This makes Leonard "a Rule 26(a)(2)(B) expert witness who should have been designated in accordance with the requirements found in this rule."  *Id.*

Plaintiff responds that Leonard was not required to be disclosed as an expert under Rule 26(a)(2)(B).  ECF No. 49 at 1–3.  First, Plaintiff argues the PowerPoint Leonard reviewed in preparation for his deposition was not prejudicial to the defense and consisted mostly of Leonard's own records that were disclosed to Defendants.  *Id.* at 2.  Next, Plaintiff claims that Leonard's opinion as to causation does not make him a Rule 26(a)(2)(B) witness because he formed those opinions during the course of his treatment of Plaintiff.  *Id.* at 2–3.

The Court agrees with Defendants that some of Leonard's testimony as to causation extend beyond that of a "treating physician," and as such should have been disclosed pursuant to Rule 26(a)(2)(B).  Although a treating physician typically need not provide a written report, where an expert's opinion extends beyond that of a treating physician an expert report may be required.  *Compare* FED. R. CIV. P. 26 advisory committee's note to 1993 amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written

7

report.") *with Shelton v. Wise*, No. A-07-CA-063 RP, 2009 WL 10699993, at *3 (W.D. Tex. Sept. 1, 2009).  "The biggest concern with permitting treating physicians to testify in all circumstances without providing expert reports is that this would permit circumvention of the policies underlying the expert report requirement.  A party might attempt to avoid Rule 26(a)(2)(B)'s requirement by having a treating physician testify on an issue instead of having an expert do so."  *Shelton*, 2009 WL 10699993, at *3 (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007)).  In *Shelton*, then-Magistrate Judge Pitman excluded the opinion of a physician "concerning the defensive nature of the injuries suffered by Plaintiff" because they "were not part of the treatment" that physician provided.  *Id.* at *4.  Judge Pitman thoroughly examined the law from other federal courts of appeals and many district courts, including those within the Fifth Circuit, and found that "[t]he weight of authority appears in favor of limiting treating physicians who have not filed expert reports to testimony concerning their treatment."  *Id.* at *2–3 (collecting cases).

Here, Plaintiff designated Leonard as a "treating provider" to testify regarding Plaintiff's "injuries sustained…in the incident made the subject of this suit, their medical diagnosis [and] prognosis."  ECF No. 36 at 4.  However, Leonard's deposition testimony reveals that his opinion extends beyond medical diagnosis and prognosis and touches upon causation.  Certainly, Leonard may testify—based on his education and experience as a treating neurosurgeon—as to the effects vehicular collisions may have on the spine generally.  But in this case, to the extent Leonard relies on sources other than those of a treating physician to causally connect the accident at issue in this lawsuit and Plaintiff's injuries, Leonard's opinion exceeds that of a treating physician and should have been disclosed under Rule 26(a)(2)(B).  For example, Leonard testified that a motor vehicle collision like the one described in Plaintiff's crash report, where an 18-wheeler sideswipes another vehicle, can cause injuries to the cervical spine.  Leonard Dep. 11:4–22.  Leonard based that

opinion on his review of the Texas Peace Officer's Crash Report, which he reviewed in anticipation of litigation. *Id.* 37:7–19.  Leonard admits that he did not review the crash report in the course of his treatment of Plaintiff, and that he would not normally review such a document in the course of treatment. *Id.* 37:14–39:1.[2]  This testimony exceeds that of a treating physician, is beyond the scope of Plaintiff's designation of Leonard under Rule 26(a)(2)(C), and should have been disclosed pursuant to Rule 26(a)(2)(B).

The Court further finds that exclusion of Leonard's testimony that exceeds that of a treating physician is warranted under Rule 37.  FED. R. CIV. P. 37(c)(1).  Plaintiff provides no justification for her failure to disclose Leonard (other than her argument that such disclosure was not required).[3] And Plaintiff's failure to properly disclose Leonard's opinions was not harmless because Defendants were not afforded the opportunity to review a written report and the other materials required by Rule 26(a)(2)(B) before Leonard's deposition.  Limitation of Leonard's testimony is

---

[2] Q: "And a police report isn't something that you're normally going to look at in the course of your treatment…of a patient; correct?"
A: "Correct, unless I'm asked to opine on specific points in the police report in a setting such as this.  It's normally not part of the evaluation of a patient."
Q: "So as a treating physician, when you go to treat a patient, a police report is something outside of the normal realm of what you would look at in your normal practice as a neurosurgeon; correct?"
A: "Correct…."
Q: "And so, that document was provided to you basically for the purpose of this litigation; correct?"
A: "Well…you have to ask whoever provided it.  I have no idea what their purpose was."
Q: "Okay. But it wasn't provided to you for the purpose of providing treatment to [Plaintiff]; correct?"
A: "Correct.  Again, I only saw it a few moments before we started the deposition."

[3] Defendants are correct that the Fifth Circuit, in reviewing a trial court's exercise of its discretion to exclude experts not properly designated, considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).  Plaintiff does not argue that her failure to designate is substantially justified or harmless, so the Court does not find it necessary to go into exhaustive detail analyzing these factors.  However, the Court notes that (1) Plaintiff offers no explanation for her failure to properly designate Leonard; (2) Plaintiff does not assert the importance of Leonard's testimony, but "the importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders,'" *id.*; (3) Plaintiff's failure to properly designate Leonard precluded Defendants from preparing to depose Leonard as a causation expert, and Defendants should not have the bear the cost of curing that prejudice, and (4) a continuance would not cure any prejudice to Defendants without undue delay and expense to Defendants themselves.

necessary to prevent "circumvention of the policies underlying the expert report requirement." *Shelton*, 2009 WL 10699993, at *3.

The Court will therefore follow the "weight of authority" discussed by Judge Pitman in *Shelton* and limit Leonard to testimony related to his role as a treating physician. Any causation opinion Leonard offers that was not formed in the course of treating Plaintiff, or that is based on facts not known or considered at the time of Plaintiff's treatment (such as the Texas Peace Officer's Crash Report) will be excluded pursuant to Rule 37. However, Leonard's opinions and testimony as a treating physician were adequately disclosed under Rule 26(a)(2)(C), and Rule 37 provides no basis for their exclusion.[4] The Court will therefore evaluate the admissibility of Leonard's properly disclosed testimony under Rule 702.

### ii. Is Leonard's causation opinion admissible under Rule 702?

Next, Defendants argue that Leonard's opinions as to causation are not reliable and should be excluded. To the extent this relates to Leonard's causation testimony that has already been excluded as improperly disclosed, this argument is moot. *See supra* Section II(a)(i). Leonard's opinion as to causation that he formed as Plaintiff's treating physician during the scope of that treatment were not excluded under Rule 37. *Id.*

At the time of treatment, Leonard noted in his assessment that Plaintiff suffered an "[i]njury due to motor vehicle accident." Leonard Dep. 152:14–153:7. During his deposition, Leonard testified that in the course of diagnosing a patient's condition, he is required to assess how a patient was injured and to "assign a causative event when at all possible." Leonard Dep. 55:21–57:5.

---

[4] This includes any opinion as to causation formed during the course of treatment as well as Leonard's testimony as to the reasonableness and necessity of Plaintiff's medical expenses. *See* ECF No 49-2 at 11 (Leonard's documented "assessment" that Plaintiff suffered an "[i]njury due to motor vehicle accident"); Leonard Dep. 152:14–153:7 (explaining that in the normal course of treatment he reviews patient's medical records from other providers and is familiar with total charges); ECF No. 36 at 4 (disclosing that Leonard "may testify regarding…the reasonable and necessary cost" of Plaintiff's medical treatment).

Leonard follows a three-step methodology for determining causation that he learned during residency: (1) whether the cause for the injury in question is reasonably plausible, (2) whether there is a temporal relationship between the cause and the injury, and (3) whether there is a more plausible cause for the patient's symptoms.  Leonard Dep. 88:13–91:11.  "[W]hen those three criteria are met," Leonard "was trained that you can accurately and confidently ascribe causation to a particular incident."  Leonard Dep. 91:8–10.  That's the process Leonard applied in this case to form his opinion that, based on reasonable medical probability, that the motor vehicle accident Plaintiff reported to him during her first visit was the cause of Plaintiff's injuries and symptomatic pain.  Leonard Dep. 34:10–24; 91:10–11.  Leonard based his opinion on Plaintiff's health history that she reported to Leonard in writing and verbally, his physical examination and treatment of Plaintiff, and his review of MRI imaging of Plaintiff's spine.

Defendants argue that Leonard's causation opinion is not reliable because it is based on insufficient facts: namely, that Leonard failed to consider and exclude other possible causes of injury when forming his opinion.  ECF No. 45 ¶ 36 (citing *McNabney v. Lab Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005)).  According to Defendants, Leonard did not review "numerous relevant items and pieces of information…prior to rendering his opinions," including Plaintiff's medical records from: Guadalupe Regional Medical Center, where she was treated two days after the accident; Plaintiff's gynecologist, Dr. Reddy, who treated Plaintiff shortly after the accident; or Perry Chiropractic Clinic related to an MRI.  ECF No. 45 ¶¶ 39–41.  Defendants also claim Leonard was unaware of two prior accidents and did not take them into account in forming his causation opinion.  *Id.* ¶ 42.  Finally, Defendants attack Leonard's methodology used to render his causation opinion as "inherently flawed" due to its reliance on temporal proximity.  *Id.* ¶ 48.

Plaintiff responds that Leonard's opinions are reliable and based on a proper foundation consisting of Leonard's "medical education, training, extensive experience, expertise, knowledge and skill as a neurosurgeon" and "his clinical and hands on examination of the Plaintiff and the results of diagnostic imaging personally reviewed by" Leonard.  ECF No. 49 at 3.  Plaintiff urges that the *Daubert* factors should not be rigidly applied when assessing the admissibility of clinical medical testimony, and instead the Court should merely "determine whether the doctor's proposed testimony as a clinical physician is soundly grounded in the principles and methodology of his field of clinical medicine."  *Id.* at 5.  Plaintiffs argue that under the Texas "analytical gap" approach the Court need not determine whether a medical causation expert's opinion is correct but just that it is reliable, and that such an expert "need not disprove or discredit every possible cause other than the one espoused by him."  ECF No. 49 at 5 (citing *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010)) (internal citations omitted).

The Court finds Leonard's causation opinion admissible under Rule 702 and *Daubert*.  Although Defendants are correct that the *Daubert* factors apply to even a treating physician's causation opinion, the factors do not work to exclude Leonard's opinion here.  It is undisputed that Leonard is qualified as an expert by virtue of his education and experience as a neurosurgeon.  Leonard applied his "technical" and "other specialized knowledge" to diagnose Plaintiff based on her reported symptoms before and after the accident, diagnostic imaging, and his own physical assessment of Plaintiff's conditions.  Fed. R. Evid. 702(a), (b).  Leonard applied his three-step methodology to those facts to form his conclusion.  Fed R. Evid. 702(c), (d).  Defendants raise the issue of Leonard's failure to review certain documents of Plaintiff's treatment with other providers, but this attack on the "bases and sources" of Leonard's opinion is better put to the finder of fact than to the Court in its gatekeeping role.  *Viterbo*, 826 F.2d at 422 ("As a general rule, questions

relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

Defendants are correct that in some cases the trial court may exclude a medical causation expert's opinion as unreliable "where the expert failed to exclude other possible causes of injury" or where the expert is unaware of the plaintiff's "pertinent medical history." *See McNabney*, 153 F. App'x at 295. However, Leonard's failure to consider the two prior accidents Plaintiff was involved in does not trigger such exclusion in this case. Plaintiff testified that she remembers being involved in two prior motor vehicle collisions—both minor two-car collisions, one in the 1990s and one in the early 2000s. Dep. of Jessica Perez 35:7–36:12, 40:9–42:3, ECF No. 45-4 (hereinafter, "Perez Dep.") (describing involvement in prior auto collisions in early 2000s and late 1990s). Plaintiff did not experience any symptoms after either collision or seek any medical treatment. *Id.* This is not the type of "pertinent" medical history whose non-disclosure would render Leonard's opinion unreliable. *See McNabney*, 153 F. App'x at 295; *Viterbo*, 826 F.2d at 423. Unlike in *McNabney*, Leonard is Plaintiff's treating physician and bases his causation opinion on more than just her deposition testimony.[5] And unlike in *Viterbo*, the history Leonard failed to consider—accidents that occurred over a decade ago and resulted in no symptoms—are not closely related to the symptoms Plaintiff experienced after the accident in question here.[6] *See also Crump*,

---

[5] In *McNabney*, the plaintiff suffered an injury to her left arm that she alleged was caused by a negligently conducted blood draw procedure. *McNabney*, 153 F. App'x at 294. The *McNabney* expert opined that the blood draw was the cause of plaintiff's injury. But unlike Leonard, the expert in *McNabney* was not a treating physician and was retained after the lawsuit had commenced. The *McNabney* expert also based his opinion solely on the plaintiff's deposition testimony and failed to consider that the plaintiff was an intravenous drug user for at least six years prior to the injury and that she sustained a severe shoulder injury two years prior to the blood draw that caused many of the same symptoms plaintiff attributed to the blood draw. *Id.* at 294–95.

[6] In *Viterbo*, a treating physician relied on the plaintiff's oral history, the tests conducted, and one study to support his opinion that plaintiff's depression, nervousness, hypertension, renal failure, and other ailments were caused by plaintiff's exposure to a pesticide. *Viterbo*, 826 F.2d at 423. The Fifth Circuit affirmed the district court's exclusion of the expert's testimony as unreliable in part because the plaintiff's oral history "was incomplete in a critical area"—namely, that the plaintiff had a family history of depression and hypertension and that several of his relatives had been hospitalized and treated for these symptoms. *Id.*

330 S.W.3d at 218 (expert only required to offer evidence excluding other "plausible causes of the injury or condition that could be negated").

Finally, Defendants' attack on Leonard's methodology is without merit.  Defendants insist on the importance of a physician performing a differential analysis in order to rule out other causes of injury.  ECF No. 45 ¶ 37.  Leonard in fact testified that he performed a differential diagnosis of Plaintiff as he does in all of his evaluations of patients.  Leonard Dep. 40:12–23.  Defendants take issue with Leonard's "reliance upon the temporal proximity of the reported symptoms in relation to the accident" as "insufficient to support a causal conclusion."  ECF No. 45 ¶ 46.  But Leonard's testimony makes clear that temporal proximity is but one consideration in his three-step methodology for assigning causation to a patient's injury.

Defendants' arguments against the admissibility of Leonard's causation opinion are better taken as attacks on the weight that should be afforded his testimony for a jury, not the Court, to determine.  Leonard will be permitted to provide his causation opinion that was formed in the course of his treatment of Plaintiff.

### iii.   Is Leonard's testimony as to medical expenses reliable and admissible?

Finally, Defendants argue that Leonard's opinions regarding the expenses charged for Plaintiff's care fail to meet Rule 702's standards for admissibility.  ECF No. 45 ¶ 49.  Leonard testified that it is his opinion that the treatment Plaintiff received following the accident "was reasonable and necessary," and that the charges "are the usual and customary charges" and "are reasonable."  Leonard Dep. 34:25–35:21.

Defendants argue that, as with Leonard's causation opinion, his opinion on Plaintiff's medical expenses is premised on insufficient facts and "mere conjecture."  ECF No. 45 ¶ 50.

Specifically, Defendants take issue with Leonard's opinion on the reasonableness of three distinct charges for the following reasons:

- Foundation Surgical Hospital, where Leonard performed surgery on Plaintiff, because:
    - Leonard opined the charges were in line with what other area hospitals charge but provided no documents to support this contention;
    - Leonard did not review the actual itemization of the charges; and
    - Leonard opined on the reasonableness of charges that are routinely not allowed to be charged by other hospitals in the area.
- Perry Chiropractic Clinic, because Leonard did not review specific billing records and entries for this facility; and
- Guadalupe Regional Medical Center, because:
    - Leonard assumed the care rendered to Plaintiff was related to her injuries in this suit, and
    - Leonard did not review the records from this facility before rendering his opinion.

ECF No. 45 ¶¶ 50–57.

Plaintiff responds that Leonard is qualified to give his opinion as to the reasonableness of Plaintiff's medical charges, and that his opinion is reliable, because of his experience performing spinal surgeries in San Antonio since 2004, his familiarity with the costs of those surgeries in the area, and his familiarity with the costs of various treatment received by Plaintiff. ECF No. 49 at 10.

The Court agrees with Plaintiff that Leonard's opinion as to Plaintiff's medical charges is admissible. Leonard based his opinion on his experience performing 75 to 100 surgeries like the one he performed on Plaintiff per year throughout his career—a total of approximately 1,500 to 2,000 surgeries. Leonard Dep. 61:23–62:1. In his experience, the fees charged by Foundation were the "average charge" for a similar surgery. *Id.* 62:2–12. Leonard admits that he based his opinion on reasonableness of the charges on "the totality of the charges" and not their itemization. *Id.* 110:23–24. Leonard further testified that in his role as a treating physician he regularly reviews and is familiar with charges for other treatment Plaintiff received, such as chiropractic and

emergency care for spinal injuries.  *Id.* 153:4–17.  Leonard's opinion is based on his "specialized knowledge" as a practicing spinal surgeon familiar with the type of injury Plaintiff sustained and the treatment such injuries regularly requires.  FED. R. EVID. 702.  Defendants' attacks on Leonard's opinion on the reasonableness of Plaintiff's medical charges—like their attacks on Leonard's causation opinion—are on the "bases and sources" of his opinion.  Such questions "affect the weight to be assigned to that opinion rather than its admissibility" and should "be left for the jury's consideration."  *Viterbo*, 826 F.2d at 422.  Therefore, the Court will permit Leonard to testify as to the reasonableness and necessity of Plaintiff's medical charges.

> b.  <u>Kerry V. Nelson</u>

Plaintiff designated Kerry V. Nelson ("Nelson") as her sole retained expert witness.  ECF No. 36 at 9.  Nelson is a "truck and safety expert" who is "expected to testify as to the link between force magnitude and visible damage in a motor vehicle collision that resulted in vehicle damages, the relationship between impact force on the vehicle and the force transmitted to the vehicle occupants during the incident in this case."  *Id.*  Plaintiff provided to Defendants Nelson's written report and curriculum vitae.  *Id.*

Defendants move to limit two specific aspects of Nelson's testimony: opinions about the actions and omissions of Defendant Boecken, and opinions that Defendants argue are "nothing more than an attempt to render legal conclusions related to…gross negligence."  ECF No. 50 ¶¶ 7–8.  Plaintiff failed to timely respond to Defendants' motion, and so has failed to meet her burden to show the challenged testimony is admissible.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions…are reliable").  The Court will therefore **GRANT** the motion as unopposed as stated below.  *See* Local Rule CV-7(e)(2) ("If there is no

response filed within the time period prescribed by the rule, the court may grant the motion as unopposed.").

### i.   *Nelson's opinions regarding Boecken's actions and omissions*

In his expert report, Nelson provides the following opinions and conclusions regarding Defendant Boecken: (1) Boecken had an obligation to maintain a proper lookout at all times while operating his Commercial Motor Vehicle ("CMV"); (2) Boecken had an obligation to effectively manage the space around his CMV at all times while under operation; and (3) Boecken had an obligation to initiate a safe lane change at all times while operating his CMV.  ECF No. 50-1 at 2. Additionally, according to Nelson the accident at issue in this lawsuit "was a result of Mr. Boecken failing in his obligation to properly manage the area around his CMV while under operation by not keeping a proper lookout at all times and making an unsafe lane change."  *Id.* at 3.  It is this latter opinion to which Defendants object.

Defendants argue Nelson's opinions as to Boecken's actions and omissions are unreliable and inadmissible under Rule 702 because they are "nothing more than [Nelson's] subjective interpretation of the events surrounding the accident."  ECF No. 50 ¶ 13.  According to Defendants, Nelson did not perform any actual scientific research, calculations, measurements, or accident reconstruction work to support his opinions.  *Id.* ¶¶ 14–17.  Instead, Nelson bases his opinions on his review of photographs from the incident, the testimony of Plaintiff and Boecken, applicable safety regulations, and his experience in the trucking industry.  Defendants argue that Nelson's opinions "are in the nature of attempted 'accident reconstruction' type testimony" even though Nelson admits he did not perform an accident reconstruction to support his opinions in this case. *Id.* ¶ 18.  Defendants point to a similar case where Nelson's opinion was excluded by Magistrate Judge Elizabeth S. Chestney.  *Id.* ¶ 19 (citing *Alpizar v. John Christner Trucking, LLC*, No. SA-

17-CV-00712-FB, 2019 WL 1643743, at *10 (W.D. Tex. Apr. 16, 2019), *report and recommendation adopted*, No. CV SA-17-CA-712-FB, 2019 WL 4087445 (W.D. Tex. May 17, 2019)).  In *Alpizar*, Nelson was designated to testify as to the defendant-driver's failure to be attentive and to maintain safe following distance.  *Id.* at *9.  Defendants in that case moved to exclude Nelson's opinion as unreliable for basically the same reasons urged by Defendants here. *Id.* at *10.  Nelson based his opinion in *Alpizar* on his review of "the police report and [the driver's] deposition, as well as the Federal Motor Carrier Safety Regulations and the Texas Commercial Motor Handbook regarding the need to maintain a safe following distance."  *Id.*  Magistrate Judge Chestney prohibited Nelson from offering testimony regarding the driver's alleged actions or omissions, but permitted Nelson to testify "as a trucking safety expert on 18-wheelers generally," including safe following distances and typical protocols to avoid a collision when operating an 18-wheeler.  *Id.*

The Court agrees with Defendants that Nelson's testimony regarding Defendant Boecken's actions or omissions is inadmissible as expert testimony under Rule 702.  Although Nelson is "qualified as an expert by knowledge, skill, experience, training, or education" to testify about trucking safety and regulations generally, his opinions about the specific accident in this case are supported by nothing more than his review of photographs and deposition testimony.  Such testimony is not "the product of reliable principles and methods," as required by Rule 702—rather, it is merely the conclusion of the expert connected to the underlying facts only by the expert's *ipse dixit*.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).  Therefore, Nelson's opinions regarding Boecken's actions or omissions will be excluded.  Nelson will be permitted to testify regarding a CMV-operator's obligations generally; he will not be permitted to testify regarding Boecken's failure to comply with those obligations.

ii.  *Nelson's opinions regarding gross negligence*

Nelson concludes in his expert report that "CAB Transport allowed an unqualified and unsafe driver to operate a CMV on their behalf."  ECF No. 50-1 at 5.  Nelson further opines that Boecken "had an obligation to operate his CMV in a safe manner and failed in that obligation.  As a result, both CAB Transport and Mr. Boecken consciously disregarded the safety and welfare of the motoring public creating a risk of serious injury or death should a collision occur."  *Id.* Defendants argue this "opinion" is nothing more than an attempt "to offer a legal conclusion related to Plaintiff's gross negligence cause of action," parroting the elements of gross negligence under Texas law.  ECF No. 50 ¶ 25 (citing Tex. Civ. Prac. & Rem. Code § 41.001(11)).[7]

The Court agrees with Defendants that this portion of Nelson's opinion ventures into impermissible legal conclusions and "invades the court's province and is irrelevant."  *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).  "Although expert testimony is not objectionable solely because 'it embraces an ultimate issue to be decided by the trier of fact,' experts are not permitted to render conclusions of law."  *Albert Sidney Johnston Chapter, Chapter No. 2060, United Daughters of the Confederacy v. Nirenberg*, No. SA-17-CV-1072-DAE, 2018 WL 5114150, at *4 (W.D. Tex. Oct. 18, 2018) (citing FED. R. EVID. 704(a) and *Owen*, 698 F.2d at 240).  Accordingly, Nelson will not be allowed to testify that Defendants Boecken or CAB Transport "consciously disregarded the safety and welfare of the motoring public creating a risk of serious injury or death should a collision occur."  Nelson's opinion as to Boecken's failure to operate his CMV in a safe manner has already been limited: Nelson is permitted to testify as to a

---

[7] Texas law defines "gross negligence" as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."  TEX. CIV. PRAC. & REM. CODE § 41.001.

driver's obligations generally, but not as to Boecken's specific actions or omissions.  *See supra* Section II(b)(i).  Finally, Nelson is not permitted to offer his opinion that CAB Transport "allowed an unqualified and unsafe driver to operate a CMV on their behalf," though he may testify as to the obligations of motor carriers generally.

       c.  <u>Christine Dickison</u>

Defendants designated Christine Dickison ("Dickison") as one of several retained expert witnesses.  ECF No. 38 at 11–12.  Dickison is a registered nurse, Certified Professional Coder, and Certified Professional Medical Auditor who is "expected to provide testimony with respect to the medical expenses charged to Plaintiff" by various medical providers "for various treatments received."  *Id.*  Defendants provided to Plaintiff Dickison's written report and curriculum vitae. *Id.* at 12.  In her counter-affidavits, provided as part of Defendants' expert designation, Dickison explains that she reviewed medical and billing records from five of Plaintiff's medical providers. ECF Nos. 59-1, 59-2.  Dickison compares the medical providers' "billing/coding with the medical documentation to determine if the coding was properly applied" using standard "CPT codes" as defined by the American Medical Association for all medical services across the United States. *Id.* at 2.  Dickison ultimately opines on whether the charges "are reasonable for the zip code and specific date when the services were provided" using a database called Context4Healthcare ("C4H").  *Id.* at 3.  C4H helps Dickison determine the "median charge" (or 50th percentile) for the specific CPT code—that is, the median value "for that same service in the same given area on the same date of service."  *Id.*  Dickison also relied upon the Texas Price Point website for "inpatient usual and customary" charges, using the median charge for hospitals in Bexar County, Texas in 2017.  *Id.*  Plaintiff moves to strike Dickison as a witness because she is not "qualified as an

'expert'," and because Dickison's opinion lacks foundation, is unreliable, and is irrelevant.  ECF
No. 51.  For the reasons below, the Court will **DENY** Plaintiff's motion.

<em>i.   Is Dickison qualified as an expert?</em>

Plaintiff urges that Dickison is not qualified as an expert under Federal Rule of Evidence
702 or *Daubert*.  According to Plaintiff, Dickison "does not have the education or training" needed
to determine reasonable charges for neurosurgery, and Dickison does not otherwise have
specialized knowledge that qualifies her as an expert.  *Id.* at 3–4.  Defendants respond that Dickison
is qualified to serve as an expert by virtue of her education, knowledge, skill and experience.  ECF
No. 59 ¶ 8.

The Court agrees with Defendants that Dickison is qualified to testify as an expert witness
on Plaintiff's medical charges.  Dickison's extensive training and experience evaluating medical
charges qualify her as an expert "by knowledge, skill, experience, training, or education" and her
"technical or other specialized knowledge will help the trier of fact to understand the evidence or
to determine a fact in issue."  FED. R. EVID. 702.  Dickison has experience as a practicing nurse,
nurse consultant, and owner of a medical bill auditing business.  ECF No. 59-1.  She has also been
trained and educated in medical coding and medical bill auditing by the American Association of
Professional Coders.  *Id.*  Overall, Dickison has over 22 years of experience in the healthcare field,
14 of those specifically in medical billing review, coding, and auditing.  *Id.*  Dickison's use of a
database that compiles information about medical charges does not somehow disqualify her from
testifying as an expert.  Texas courts have found an expert qualified to provide opinion testimony
on the reasonableness of medical charges where the expert is not a medical provider, or where the
expert relies on data from a database to support their opinion.  *See Gunn v. McCoy*, 554 S.W.3d
645, 674–75 (Tex. 2018); *In re Brown*, No. 12-18-00295-CV, 2019 WL 1032458, at *3 (Tex. App.

—Tyler Mar. 5, 2019), *mandamus dismissed*, No. 12-18-00295-CV, 2019 WL 1760103 (Tex. App.

—Tyler Apr. 10, 2019, orig. proceeding).  And use of the C4H database Dickison relied on requires

the user to be "proficient in the use of CPT codes, the use of CPT modifiers, billing interpretation,

and the different medical fee schedules"—all specialized knowledge that Dickison possesses by

virtue of her experience and education.  The Court therefore finds Dickison is qualified to testify

as an expert under Rule 702.

### ii.   Are Dickison's opinions properly founded and reliable?

Plaintiff argues that Dickison's opinion is unreliable "for several reasons."  ECF No. 51 at

4.  First, Plaintiff takes issue with the C4H program Dickison used to form her opinions because

she was not involved with developing the program, has no idea how billing data is submitted to

the database, and "cannot personally vouch for the accuracy of the raw data collected and entered"

by C4H.  *Id.* at 4–5.  Next, Plaintiff complains there is "no actual printout from the [C4H] program

itself" but just what Dickison listed in her reports.  *Id.* at 5.

Defendants respond that Dickison's opinions "are grounded in a reliable methodology

which requires her specialized expertise to interpret and correlate Plaintiff's medical and billing

records." ECF No. 59 ¶ 14.  Specifically, Dickison's analysis of Plaintiff's billing records requires:

reviewing the CPT codes found in the records (which are standardized by the American Medical

Association and state to state, and apply to all healthcare providers); comparing the CPT codes

with the records to determine whether the correct codes were used; relying on reference manuals

published by the AMA for the applicable years; and determining whether the medical records

support the use of the CPT codes reflecting in the billing record.  *Id.* ¶ 15.  As for Dickison's

reliance on the C4H database, Defendants state that Dickison uses the database to evaluate charges

on Plaintiff's billing record compared to other providers in the area.  Dickison relied on the C4H

database, as well as other sources (such as the Texas Price Point resource maintained by the Texas Hospital Association) to opine "as to the median, usual, customary, and reasonable charge to be submitted for Plaintiff's treatment." *Id.* ¶¶ 18, 20.

The Court agrees with Defendants that Dickison's testimony is reliable under Rule 702 and *Daubert*. Dickison details her methodology, which requires her to evaluate Plaintiff's medical billing records and compare them to nationwide CPT codes, apply her expertise to determine whether medical documentation supports those charges, and evaluate the manner of billing by those providers. *See* ECF No. 59-1 at 9–12. Dickison's use of the C4H database does not render her methodology unreliable. *See Koenig v. Beekmans*, Case No. 5:15– CV–0822–OLG, 2017 WL 7732809, at *3 (W.D. Tex. Mar. 23, 2017) (rejecting defendants' argument that plaintiff's expert's use of a database to determine future medical expenses was unreliable or constituted an improper methodology). Plaintiff's attack on Dickison's opinion goes to the "bases and sources of an expert's opinion" and "affect[s] the weight of the evidence rather than its admissibility." *Id.* Such a dispute "should be left for the finder of fact." *Id.*

### iii. Are Dickison's opinions relevant?

Finally, Plaintiff argues Dickison's "reports are irrelevant because they state that only the fiftieth (50th) percentile constitutes a 'reasonable' charge." ECF No. 51 at 5. Plaintiff argues this is irrelevant "[c]onclusive opinion testimony…because it does not tend to make any material fact 'more or less probable.'" *Id.* at 6 (citing *Wal-Mart Stores, Inc. v. Merrill*, 313 S.W.3d 837, 839 (Tex. 2010)).

Defendants respond that Dickison's opinions, which rely on databases compiling list prices and actual prices of medical expenses, are "certainly relevant to the reasonableness of Plaintiff's medical expenses, an element of her claimed damages." ECF No. 59 at 12. The Court agrees.

Dickison's opinions, which center around a compiled database's 50th percentile data point, are certainly <u>relevant</u> to the issue of reasonableness.  Dickison's opinion has a "tendency to make a fact more or less probable than it would be without the evidence," and will "assist the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 401; *Daubert*, 509 U.S. at 591.  Whether Dickison's opinion is ultimately <u>correct</u> is not for the Court to decide as a "gatekeeper" under *Daubert*.  That Plaintiff takes issue with the use of the 50th percentile data point, rather than some other data point, goes to the weight of Dickison's opinion, not to its relevance.

       d.  <u>Dr. Warren F. Neely, M.D.</u>

Defendants designated Dr. Warren F. Neely, M.D. ("Neely") as another of their retained expert witnesses.  ECF No. 38 at 7.  Neely is a doctor who specializes in neurological surgery, and "is expected to offer testimony concerning the Plaintiff['s] alleged injuries, the relation, if any, between the accident in question and Plaintiff's injuries at issue, his review of the medical records and evidence obtained in this case, and the reasonableness and necessity of any future medical treatment and expenses for Plaintiff."  *Id.* at 7–8.  More specifically, Neely "is expected to testify the cervical spine surgery performed on [Plaintiff] by Dr. Leonard was not reasonable and necessary."  *Id.* at 8.  Defendants provided to Plaintiff Neely's written report and curriculum vitae. *Id.*

Plaintiff moves to strike or limit Neely's testimony.  ECF No. 52.  Specifically, Plaintiff objects to Neely's opinion that the charges for Plaintiff's surgery were excessive based on his "familiar[ity] with the usual and customary payments by Medicare and commercial health insurance companies, in the San Antonio and South Texas area, for surgical procedures of this type."  *Id.* at 2.  Plaintiff argues that this portion of Neely's testimony is irrelevant and inadmissible

under Texas law. *Id.* at 3. According to Plaintiff, "[b]ecause Dr. Neely's testimony is centered around amounts that are typically reimbursed by various collateral sources, his testimony is irrelevant and inadmissible." *Id.*

Defendants respond that Neely's opinion that the charges for Plaintiff's surgery were excessive is reliable and relevant, and that any attempt to limit his testimony as irrelevant is "premature" because "of the absence of critical information concerning the source of any payments made for Plaintiff's treatment at this facility." ECF No. 60 at 3. According to Defendants, because of the ongoing discovery dispute regarding the production of "records concerning the amount allegedly paid for Plaintiff's medical expenses, who made the payment, along with any agreements or correspondence with the third party payor…it is unknown whether Plaintiff's total medical expenses owed to Foundation have been, or will be determined by negotiated reimbursement rates." *Id.* ¶¶ 16–17.

The Court finds (and Plaintiff does not dispute) that Neely's testimony is admissible under Rule 702 and *Daubert*. Plaintiff only argues that Neely's opinion is "irrelevant and inadmissible" under Texas's collateral source rule. The collateral source rule "precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else—a collateral source." *Haygood v. De Escabedo*, 356 S.W.3d 390, 394–95 (Tex. 2011). This rule has no applicability to Neely's proposed expert testimony. Neely opines that the "estimated charges for surgery by Dr. Leonard, and the actual billed charges by Foundation Surgical Hospital" for Plaintiff are "excessive." ECF No. 52-2 at 3. One of the bases of Neely's opinion is his familiarity "with the usual and customary payments by Medicare and commercial health insurance companies…for surgical procedures of this type." *Id.* Neely does not offer evidence of "benefits received by [Plaintiff] from someone else." *Haygood*, 356 S.W.3d at 394. Plaintiff's objection to

Neely's opinion goes to the "bases and sources" of the opinion, not to inadmissible evidence of a collateral source of payment to Plaintiff in this case.  Plaintiff is entitled to question the weight assigned to Neely's opinion, but ultimately such a dispute is "left for the jury's consideration." *Viterbo*, 826 F.2d at 422.  Therefore, the Court will **DENY** Plaintiff's motion to strike or limit Neely's testimony.

**CONCLUSION**

As stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude the Testimony and Records of Plaintiff's Designated Expert Witness Michael Leonard, M.D. (ECF No. 45); **GRANTS** Defendants' Motion to Limit the Testimony of Plaintiff's Designated Expert Witness Kerry V. Nelson (ECF No. 50); **DENIES** Plaintiff's Motion to Strike Retained Defense Witness Christine Dickison (ECF No. 51); and **DENIES** Plaintiff's Motion to Strike or Limit the Testimony of Retained Defense Witness Warren Neely, M.D. (ECF No. 52).

It is so **ORDERED**.

**SIGNED** this 10th day of June, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE